MARY (A SLAVE) v. THE STATE.

SEPT. TERM, 1837.

Mary (a slave) v. The State.

1. Under our statute, authorising the circuit judge, on being informed that a person is in custody charged with crime, to order a special term, &c., an order directed to the clerk, stating that such a term *will* be held at a specified time, and directing a grand jury to be summoned, without stating the object of holding such term, though somewhat informal, is yet legal.

2. This statute embraces not only such cases as have been passed upon by a grand jury, but also where the defendant has been charged before a magistrate. Consequently, the court has the power of directing a grand jury to be summond to such special term.

3. Quere. In an indictment for murder, if one count charges the killing to have been occasioned by beating with a stick, and the other count alleges it to have been occasioned by drowning, can the jury find a general verdict of guilty? It seems that it would be safer for the jury to specify under which count they find the defendant guilty.

4. On the trial for a capital offence, after the evidence on behalf of the prosecution had been closed, and none offered by defendant. by consent of parties, and with leave of the court, the jury were dispersed until morning; on the re-opening of the court, the counsel for the State re-examined some witnesses for the prosecution that had been examined before, and introduced some additional ones. Held, to be error.

*Cole*, for defendant:

Mary, the above appellant, was indicted, tried and convicted of murder, at a special court, held for Crawford county, in August, 1837; and thereupon appealed her cause to this court. Upon an examination of the record, several important questions present themselves for the consideration of the appellate court. Important, because I conceive they are unsettled by any former adjudications; and because the life of a human being is dependant upon the issue. In order to the proposed examination, I shall consider first, the jurisdiction assumed by the judge of the circuit court in this case. Secondly, the indictment, and the offence, as a statutory offence, of which the defendant stands convicted; and in the third and last place, whether it be legal or illegal, after the State had closed her evidence, and the accused hers, and the case had been submitted to the jury, and the jury adjourned over, upon the condition that the defendant would introduce no more evidence, for the State to introduce witnesses to the jury and examine them in the cause, some of whom had been examined before, and others not.

And *first*, as to the jurisdiction assumed by the circuit judge in this case. Our law (L. Mo. 159, s. 48,) provides that the judge of any circuit court may at any time hold a special term, for the trial of persons charged with crime and confined in jail, by making out a written order to that

effect, and transmitting it to the clerk, who shall enter the same upon the records of the court. The law pro-vides that the ordinary terms of the circuit court for Crawford county shall be held on the first Mondays of March, July, and November—Mo. L. 163, s. 15. The trial in the above cause was had in August, as appears from the record, and assumes to be a special term of the circuit court, held for that purpose. It appears also, that the judge, at this special term, caused a grand jury to be empannelled for the purpose of finding the indict-ment upon which the appellant has been convicted and condemned to suffer death. In the first place, I assume the ground that the whole case, as presented by the record, was a case *coram non judicie*, for the want of a legal or-der. There is a notice to the clerk of the circuit court of Crawford county, that a court will be held for the trial of the defendant, with a request or direction to him to cause a grand jury to be summoned, &c. But I ask, where is the written order that a court be held for the special purpose, as provided by law? There is no such order on the record, and there never was such an order made by the circuit judge; and if there was no legal or-der to hold the court that was held, then all the above proceedings are *coram non judicie*, and void. If a spe-cial jurisdiction is given by law to do a particular thing, in a particular way, and under particular circumstances, in order to the lawful and unexceptionable exercise of this authority, the law giving the power must be strict-ly pursued. To authorise a judge of the circuit court to order a special term, a certain state of facts must pre-exist; first, there must be some person charged with crime, who is ready for trial, in a legal sense; and second-ly, that person must be in jail. Now there is no order, as aforesaid, to this effect, but in the place of an order the judge notifies the clerk that a special term will be held, &c., and directing him to have a grand jury summoned, &c. The law does not authorise nor warrant any such proceeding. A legal order of a court, as I understand it, is a command that a particular thing be done, in the terms prescribed by law. The judge's notice to the clerk is merely intended to inform him that a particular thing will be done, and requiring his co-operation in its accomplishment. Again, whenever a certain state of facts exists, as has been stated before, the judge of a cir-cuit court is authorised by law to hold a special term of his court. Now the evidence of the existence of a lawful cause, and that the judge has taken upon himself the exer-

cise of this authority, can only be proved in one way, and that is by the record evidence of a legal order, and there is no such in this record; then it follows that, although a court may have been held, yet, as there exists upon the record no lawful warrant, or authority of law for holding the same, the whole proceedings are a nullity. But there is another view of the subject, which is anomalous and striking. Our statute says, that a special term may be ordered for the trial, &c.; and that a notice shall be served on the person about to be tried, and circuit attorney, &c.—M. L. 189, s. 49. By what authority, I would respectfully ask, was a grand jury empannelled at this special term? By what authority does the circuit judge direct the clerk to cause a grand jury to be summoned, thus making the clerk his deputy in the discharge of his official duties? And by what authority does such a body, convened together in a mode unknown to the law, prefer an indictment jeopardising the life of a human being? I confess, after an anxious search, I can find no law that will abet the exercise of this authority. Our statute authorizes the empannelling of a grand jury, other than at the regular terms of the circuit courts, but in one solitary case, and that is when the grand jury have been discharged, and an offence is committed thereafter during the sitting of the same court, that court may, by an order entered on their minutes, direct another grand jury to be empannelled for the purpose of inquiring into the offence—Mo. S. 480, s. 13. But a special term of the circuit court is not ordered for the purpose of making an inquiry, through the intervention of a grand jury, whether or no a criminal offence has been committed by any one, but to try an offender for an offence that has been inquired into, and ascertained as far as was necessary in order to put the offender upon a travers jury, or in other words, upon his *trial*. "Trial" is a technical term well known to the law. The indictment is the accusation, and the trial is to ascertain, in a legal manner, the truth of it. The legislature certainly did not mean, in the passage of the law authorising special terms, that indictments or accusations, as well as trials, should be had at them. The statute says no such thing, and therefore intends no such thing. If the law did intend that indictments should be found at a special term, why is there a notice of *trial* to be given to the accused, as well as circuit attorney, the provisions of the law still harmonising which gives the circuit judge power to order a term for the trial, &c? If the grand jury have to indict, it will

SEPT. TERM,
1837.

Mary (a slave)
v.
The State.

Trials per. Pais. 6.
1 Ch. C. L. 407,
457; 4 B. C. 342;
1 Co. Lit. 155.

SEPT. TERM,
1837.

May (a slave)
v.
The State.

often happen there will be no trial. But how does the order of court and law agree with such a state of things? The judge orders a term of the circuit court to be held for the trial, &c., and there has not been the preliminary inquiry by a grand jury to ascertain whether there is any person to be tried or not. This appears to me a great absurdity. I consider the notice required by law to be given to the accused, to also mean what it says; it is to warn him that his trial is at hand, and to prepare for it; so likewise of the circuit attorney. Such a notice would be, with submission, but a simple and unmeaning affair; if delivered to a person before indictment found, it would be incomprehensible, and wholly incompatible with the nature and functions of a grand jury, who are sworn to secrecy. It is humbly submitted, therefore, that the circuit judge has greatly erred, not only in the legal organization of the special term of the circuit court aforesaid, but has also erred in organizing a grand jury at said illegal term, in a manner and under an authority unknown to the law. Having thus disposed of the preliminary question, I shall now, in the second place, consider the indictment itself, and the offence as a statutory one.

An indictment is a written accusation of a crime, presented upon oath by a grand jury. The indictment in this case, is founded upon the first section of the second article of our law with regard to crimes and punishments, which reads thus: "Every murder which shall be committed by the means of poison, or by lying in wait, or by any other kind of wilful, deliberate, and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree." In order to sustain this indictment, it must be shown that it is in strict accordance with the following branch of the above law, because no other part of the section applies to the state of facts as set out in the indictment. The part of the section I refer to is in these words: "Or by any other kind of wilful, deliberate and premeditated killing." I do not see any particular exception to this *indictment* as an indictment at common law. The conclusion to be sure is *contra forman statuti*, but yet it might be good, for in every case of homicide, there was a presumption in virtue of that law, that the slayer was guilty of a felonious killing; and the onus devolved upon him to extenuate the offence, or prove his innocence. But not so in the case under consideration. All offences, with the exception of some mis-

Archb. C. Plea; 1
M. L. 167 s. 1.

demeanors, are statutory, and the offence with which the
appellant is charged, is an offence created and defined by
statute. I consider the above indictment defective, be-
cause it does not pursue the statute. It contains two
counts, and in neither of them is it averred that the acts
charged to have been done by the accused, were done
with intent to kill. The acts are charged to have been
done wilfully, maliciously, and feloniously; but neither of
these words, nor all of them together, will cure this fatal
defect in the indictment, this departure from and aban-
donment of the statute. The acts charged might have
been maliciously done and death not intended; they
might have been done wilfully, and the offender yet be ex-
empt from capital punishment; death might not have been
intended, and the offence a penitentiary one, or, in the
case of a slave, stripes. Upon the trial of this offence,
was it not material to prove, on the part of the State,
that the killing was premeditated, and was it not also
material for the jury to find the fact so to be, in order to
the conviction of the defendant? I think so. Well, if
such proof must be preferred to the jury, it must be done
upon the *ground* that it is necessary to establish the of-
fence, or some feature of it; yet, when you come to ex-
amine this indictment you would find no averment that
would authorise its introduction. In other words, the
premeditated killing under our statute is the guilt
of the offence. This indictment leaves out the necessary
averment, and proof is introduced to the jury to supply
that defect and make out a case *dehors* the record. The
law, with regard to indictments on statutory offences, <br>Archb. C. Plea. s.
is this: it, that is the indictment, must charge the defen- 23; 2 East, 333; 2
dant, with certainty and precision, to have committed Hale, 170.
the acts under the circumstances, and with the intent
mentioned in the statute, and if any one of these ingre-
dients be omitted the defendant may demur, move in ar-
rest, &c. The defect will not be aided by verdict, nor
will the conclusion "*contra forman statuti*" cure it. To
illustrate this, I will state the following case from the
books: An indictment was holden bad that was preferred <br>Rex v. Davis,
on a law that makes it felony "wilfully and maliciously" Leak, 556.
to shoot at any person in a dwelling house or other place,
because it charged the offence to have been done unlaw- <br>Archb. Cri. Plea.
fully and maliciously, omitting the word *wilfully*. Some 23.
of the judges thought that "*maliciously*" included "*wil-
fully*," but the greater number held, that as "*wilfully*" and
"*maliciously*" were both mentioned in the statute as de-
scriptive of the offence, both must be stated in the in-

SEPT. TERM, 1837.

Mary (a slave) v. The State.

1 Chitty's Crim. Law, 282, 286, 289.

dictment. Our statute says, wilful, deliberate and pre-meditated killing. The indictment alleges that the defendant wilfully, maliciously, and feloniously, &c., but does not aver that either of the acts charged was done with intent to kill, or that killing was premeditated. Chitty lays down the rule to be, that all indictments upon statutes, especially the most penal, must state all the circumstances that constitute the definition of the offence in the statute, so as to bring the defendant precisely within it. This indictment being then deficient in this necessary and all-important averment required by the first section of our law before referred to, cannot be sustained, and the judgment therefore must be vacated and annulled for that defect.

The third and last point only now remains to be considered. The bill of exceptions preserved upon the record, shows that the cause was closed on the part of the State and defendant, and submitted to the jury for their consideration. That the jury was adjourned over to the next day, upon the condition that the defendant would introduce to the jury no more testimony; that on the next day the jury having come together, the State, by her counsel, asked leave of the court to examine witnesses again in the cause, which was granted by the court, and witnesses were accordingly examined on the part of the State; to which opinion of the court the defendant excepted. This proceeding of the circuit court involves a question of practice in the first instance. In trials of all kinds in courts of justice, the party who holds the affirmative of the issue begins; after he has concluded, the defendant commences and concludes; then counsel are heard; the court instructs; the case is then left with the jury for their consideration and verdict. The jury may hear again a witness in open court or ask questions of the judge for their direction; but after a case is submitted to a jury, neither the court nor a party have any right to introduce to them further or any evidence in the case; the jury themselves have the right to re-examine a witness in open court, but with this exception the matter is at an end; the parties to the cause have so determined it in open court, and this is right; for if it were otherwise, a trial would last forever. In this proceeding, I believe the circuit judge erred, and violated the established practice and law of the court in such cases. But there is another view of the affair that is, if possible, worse than that we have first examined. The jury was adjourned over, upon the condition that the defendant

1 Chitty's Crim. Law, 517.

would offer no more evidence. The prosecutor also closes his case; but in the morning thereafter, when the jury came together, behold the prosecutor has in the meantime procured other and new evidence on the part of the State and gets it before the jury. This was a foul proceeding, where life was the stake played for; it was an unworthy trick, an unholy trap and snare for the unwary; for the presumption is, that if the accused had rebutting testimony, it was gone from the court under the agreement aforesaid, which was made in the pres- ence of the court. In conclusion, I have only to say to this honorable court, that it is conceded that guilt should be punished, but it is respectfully submitted, that pun- ishment neither can or ought to be inflicted upon the most atrocious offender, in virtue of our laws, unless his or her guilt has been ascertained and made manifest in conformity with them; because an illegal trial and con- viction leaves the presumption of innocence just where it was, and neither can nor does prove anything, in a legal point of view, for or against the accused. Such a trial is in truth the mere shadow of the substance, a theatrical representation of the most important, the most solemn of all our judicial proceedings, to wit, the trial, conviction, and condemnation of a human creature to death.

1. The verdict in this case is repugnant, and as the court would not award a *venire facias de novo* in a capital case, the accused was entitled to be acquitted—1 Ch. Cri. law, 647, 648.

2. The sentence of the court, as pronounced upon the accused, as appears by the record, is unintelligible. It reads, that the said Mary, a slave, the prisoner, be con- fined in custody until the thirtieth day of September, eighteen and thirty-seven, &c.—Mo. L. 494, sec. 16—the sentence is void for uncertainty.

3. Again; the court is directed to cause a warrant to issue to the sheriff, reciting such conviction and sen- tence, &c. There is no evidence on this record that the court has complied with the statute in this particular— Mo. L. 494, sec. 16.

*Brickey*, for defendant:

1. Judgment will be arrested for want of sufficient certainty in setting forth either the *person*, the *time*, the *place*, or the *offence*—4 Blk. Com. page 375; and the stat- ute of Jeofails does not apply to indictments or proceed- ings in criminal cases, and therefore a defective indict-

SEPT. TERM,
1837.

Mary (a slave)
v.
The State.

ment is not aided by a verdict as defective—Pleadings in civil cases, same book and page.

2. If a person be indicted for one species of killing, as by poisoning, he cannot be convicted of a species of death entirely different, as by shooting, starving, or strangling—see Russell on Crimes, page 439, and following. In this indictment there are two counts, one for killing with a piece of wood, and the other by drowning. There is a manifest incompatibility and inconsistency between those two counts; they cannot both be true, and yet there is a general finding of the jury—Russell on Crimes, 349, and following.

3. As to the strictness required in criminal cases, and especially when they are capital—see 1 vol. Mo. Rep. page 548, State v. Cook; 1 vol. Chitty's Crim. Law, page 222; also see Mo. Rep. 1830, page 227–8, State v. Hardwick.

McGirk, Judge, delivered the opinion of the court.

At a special term of the circuit court for the county of Crawford, holden on the 16th day of August, 1837, the grand jury of that county found an indictment against Mary for the murder of a child of a Mr. Brinker. There are two counts in the indictment; the first lays the killing to be done with a stick of wood by beating; the second charges the killing to be done by drowning. On not guilty pleaded the jury found a verdict of guilty genally on both counts, and judgment of death was pronounced on the prisoner by the court. The case is brought here by appeal.

Under our statute, authorizing the circuit judge, on being informed that a person is in custody charged with crime, to order a special term, &c., an order directed to the clerk, stating that such a term will be held at a specified time, and directing a grand jury to be summoned, without stating the object of holding such term, though somewhat infor-

The first objection taken to the proceeding is, that the order of the circuit judge, for holding the special court, is erroneous and void. The act requires the judge, on being informed that there is a person in custody, charged with crime, to make an order for holding a special term of the circuit court. The act does not say to whom. the order is to be directed, nor on whom to be made. In this case Judge Evans made the order to the clerk. It is to be remarked, however, that the writing in this case does not expressly order that a court *shall* be holden, but only says a court *will* be holden. I am of opinion that the substance of the law has been complied with, though the order is not entirely formal.

The next objection taken by Brickey and Cole for the appellant is, that by law the court had no power to cause a grand jury to be summoned to the special term, but.

that the indictment must be found by a grand jury summoned to the regular term of the circuit court, and that when an indictment is so found, and the prisoner is afterwards arrested and committed, the judge can only make an order to hold a special term of the court. To dispose of this objection, it becomes necessary to look into the law authorizing the special term of the court. By the 48th section of the 1st article of the act respecting courts, (Revised Code, 139) it is enacted, that the judge of any circuit court may at any time hold a special term for the trial of persons charged with crime and confined in jail, by making out a written order to that effect and transmitting it to the clerk, who shall enter the same upon the record of the court. The act then makes some other provisions preparatory to the holding of the court, but says nothing about summoning either a grand or petit jury. In the case at bar, the clerk, on the reception of the judge's order, made out a writ to the sheriff of the county, requiring him to summon a grand jury, which was done. This grand jury found the indictment on which the prisoner was convicted. I am of opinion this grand jury was a legal one, and my reason is this: the words and substance of the 48th section, above named, require this interpretation to give effect to the obvious intent of the legislature. The section says " the judge of any circuit court may at any time hold a special term for the trial of persons charged with crime and confined in jail, by making an order," &c. The argument of counsel is, that the words "charged with crime and confined in jail," mean that the court can only be ordered where the person is charged on the oath of a grand jury, arrested and in jail on that charge. I admit that an indictment by a grand jury is a charge of crime; but it also seems to me that where a person is charged on the oath of some witness, and a warrant is issued, and a party brought before a magistrate and by him committed to prison for safe keeping, that such person is charged with crime in solemn form of law, although it is true that a charge by indictment makes the charge still more solemn. The statute law nowhere expressly declares to what court the grand jury shall come. But I think the grand jury must come to the court having power to try the offence; and in this case, the law having given the power to the special court to try the person charged with crime, all the means necessary to accomplish the end are necessarily given. It seems to me, therefore, there is no error on this point.

mal, is yet legal. This statute embraces not only such cases as have been passed upon by a grand jury, but also where the defendant has been charged before a magistrate. Consequently, the court has the power of directing a grand jury to be summoned to such special term.

SEPT. TERM,
1837.

Mary (a slave
v.
The State.

Quere. In an indictment for murder, if one count charges the killing to have been occasioned by beating with a stick, and the other count alleges it to have been occasioned by drowning, can the jury find a general verdict of guilty? It seems that it would be safer for the jury to specify under which count they find the defendant guilty.

The next objection taken by counsel is, that the court erred in refusing to arrest the judgment. One count in the indictment charges that the offence was accomplished by the prisoner beating the child to death with a piece of wood, and the other count charges that the death was occasioned by drowning, and the jury have found both charges to be true; which the counsel say is a repugnancy, and that the verdict is therefore void. I am of opinion that the child could not come to its death by both these modes. If the child was beaten with the stick in such manner that it must inevitably die in a short time by the wound, yet if it were in that condition thrown into water deep enough to drown it, and it thereon strangled and drowned, I should say that drowning was the mode of the death, for as long as the child lived after the beating the death could not be said to have yet been produced by the beating. If two causes be operating at the same time on a subject, either of which is entirely sufficient to produce a given end in time, and one gets in advance of the other, and the result then takes place, the approximate cause may safely be supposed to produce the end. I think the jury in this case should have been sent back to make up their mind on which count of the indictment the defendant was guilty, as she might be guilty on either, but could not have murdered by both modes. The court is not now entirely satisfied that for this reason, the judgment should be reversed.

On the trial for a capital offence, after the evidnce on behalf of the prosecution had been closed and none offered by defendant, by consent of parties and with leave of the court, the jury were dispersed until morning; on the re-opening of the ct. the counsel for the State re-examined some witnesses for the prosecution that had been examined before, and introduced some additional ones. Held, to be error.

The next and only remaining point, is one arising out of the bill of exceptions saved on the trial. It appears by the bill of exceptions that the State by the prosecuting attorney closed her evidence, and that the defendant gave none, and that then the court was about to adjourn till next day, before the argument could take place. Whereon it was agreed between the circuit attorney and the prisoner's counsel, under leave of the court, that the jury might disperse till next morning, on the condition that the defendant should not and would not offer any testimony at all. The court adjourned till next morning, and the jury dispersed. On the opening of the court the next day, the jury came, and the State offered to re-examine some of the witnesses examined the day before, and to examine some others not before examined at all. The prisoner's counsel objected to this; the court overruled the objection, and the witnesses were examined. What the witnesses deposed to does not appear, nor do I consider it material it should appear; the objection goes against the danger of the practice. It seems to me that

on this point the court erred. I never have yet seen a case that goes as far as this case goes; when the plaintiff has closed his evidence in chief, if the defendant gives none, he cannot, merely on the ground that he forgot something, be allowed to examine new witnesses, nor to re-examine old ones. This is not allowed, for two reasons; first, because there must be an end of the examination; and secondly, because to examine a witness after he has been discharged, and after the evidence is closed, is to allow him an opportunity to fill up gaps by perjury; and to call others, or the same, after they have mingled with the crowd, is of most dangerous consequence to truth and justice. This is the general rule: after the plaintiff has closed his case, he can only give thereafter rebutting testimony, but that can only take place when the other party gives some evidence, otherwise there can be nothing to rebut. In the case at bar the defendant had no testimony at all; consequently the evidence the State gave afterwards was not of that character. There is no reason given on the record why the prosecution asked leave and was permitted to give the amendatory evidence. It is possible there may be cases in which it might be allowed, but I cannot now think of them. The case stands then on the ground that the prosecution discovered some defect in the evidence that might be supplied, and had leave, as matter of right, to amend his hold. If this is permitted, what is to hinder parties from manufacturing evidence over night to fit the case, after, perhaps, they may have some hint from some unwary juror as to the opinion of the jury. If such a door is once opened, both good and bad men will enter the same. I admit good men would not take unlawful advantage of the privilege, but bad ones would; and as the law is not wise enough to distinguish between the bad and the good, it forbids both good and bad from the use of the privilege. If this door were once opened, I venture to believe that life and property would be more and more insecure, and perjury become more than ever an article of purchase. For these reasons I am of opinion the judgment of the circuit court of Crawford county ought to be reversed.