Wachtler, J.
After the jury had been deliberating for several hours, the trial court permitted the District Attorney to recall a prosecution witness for the purpose of giving additional testimony. The defendant objected to this procedure *351 at the trial, and on this appeal claims that it was an abuse of discretion. Under the circumstances of this particular case, we agree that the defendant should be given a new trial.
The defendant was indicted on two counts of burglary, two counts of grand larceny and one count of forgery, all arising out of the daylight burglaries of two Suffolk Ootmty homes, one of which belonged to Peter Dounias. At the trial the People introduced statements signed by the defendant in which he confessed that he had committed the crimes. The defendant took the stand and testified that he had not committed the crimes and only signed the confessions after he had been beaten and threatened by the police.
Except for the statements only circumstantial evidence pointed to the defendant’s guilt. One aspect of the prosecutor’s case, used to establish the reliability as well as the voluntariness of the defendant’s confession, consisted of certain credit cards taken from the Dounias residence and later recovered from a trash barrel located at a service area on the Long Island Expressway. According to the police the defendant himself, following his arrest and initial oral confession, directed them to this location where the cards were discovered between 1 and 2 o ’clock on the afternoon of November 18, 1971. Peter Dounias testified for the prosecution that he identified the cards on that same date. However, on redirect examination, he stated that he had seen the cards and made the identification at the station house “ shortly before noon ”, and although he was “ not positive as to the time ” it was “ pretty close to ” lunch time.
On the last day of trial, at about 1 o ’clock in the afternoon, the jury retired to deliberate. Three hours later they returned to the courtroom and requested that certain testimony, including the testimony of Peter Dounias, be read back to them. After an hour they retired only to return at 8:30 p.m. with a request that the “ cross-examination and redirect examination of Mr. Peter Dounias ” be reread. After this was done several of the jurors asked the court questions directed particularly to the time that the police recovered the credit cards and the time that Dounias saw them at the police station. Apparently with the consent of counsel, these questions were answered by the Trial Judge after he referred to his bench notes.
*352 At the conclusion of these inquiries one of the jurors asked the court to read once again “ The last two or three questions ” of the cross-examination and the brief redirect examination of Peter Dounias. At this point the prosecutor indicated that he had a request to make of the court, and after the jury was withdrawn, made the following application: “ Your Honor, it seems that since 3:15 this afternoon the jury has been hung up on the point of when Mr. Dounias got to the precinct in order to initial, sign, look at the credit cards. Now, at the time of trial he testified that to his recollection it was 12:30 or twelve o’clock. * * * Now, Detective Eyan indicated to me that that was not the case, that it was later. I tried to get a hold of Mr. Dounias from that time until today. I still haven’t spoken to him, although I did reach his wife this evening. She told me the time that he came to the precinct was later in the afternoon, about three * * * Mr. Dounias can come back and testify whatever he remembers and no one has — I haven’t spoken to him. Now, the point is obviously an important one. Because, number one, the jury has three times said it was important, has come out and asked for about six readings on the same point. It is critical not as an element of the offense * * * but to the voluntariness of the defendant’s confession * * * Because if he cooperated with them and brought the police to the expressway, then my argument to the jury was he was cooperating. He wasn’t a man who had just been beaten and it’s preposterous to believe that a man who didn’t want to cooperate with the police, who hated them, would lie if he could, would bring them to the very trash can on the Long Island Expressway where the fruits of the crime were * * * [but] J the defendant has alleged they were planted there. And if those cards were in the station house and Dounias brought them there or saw them there at twelve o’clock, it gives credence to the defendant’s testimony.”
Defense objections to this motion on the ground that the prosecutor had ample time to recall the witness during the trial — which lasted three days after Dounias testified — and that to introduce additional evidence at this time would “ in effect be denying [the defendant] a fair trial ” were overruled. The court recalled the jury, advised them of the offer and asked *353 them whether they wished to hear additional testimony from the witness.
Shortly before 11:00 p.m. Peter Dounias resumed the stand and, under direct and cross-examination, testified that he identified the credit cards at the police station “ sometime in the afternoon. I don’t recall specifically the exact moment or part of the afternoon. The only thing I recall is that I had a late lunch that day and I went down during the afternoon * * * My best recollection, anywhere from noon to three, four o’clock in the afternoon.”
Within the hour the jury returned with a guilty verdict on the burglary and larceny counts relating to the Dounias residence and acquitted the defendant on the other counts.
In this State the order of trial in criminal cases is fixed by statute (CPL 260.30, formerly Code Crim. Pro., § 388). The statutory framework however is not a rigid one and the common-law power of the trial court to alter the order of proof “ in its discretion and in furtherance of justice ” remains at least up to the time the case is submitted to the jury (People v. Benham, 160 N. Y. 402, 437; see, also, People v. Koerner, 154 N. Y. 355, 368; People v. Reaves, 26 N Y 2d 921). But to allow additional evidence after the jury has retired presents a problem of a different order and although, in one case, we recognized the court’s power to do so “ on proper facts ”, we cautioned that “ such a practice is not to be encouraged or lightly pursued ”. (People v. Ferrone, 204 N. Y. 551, 553.)
There are obvious reasons why at this stage the power to reopen a case for additional proof must be exercised with utmost caution. One reason of course is that at some point the trial must come to an end (cf. Mary v. State, 5 Mo. 71). If requests to reopen were casually granted and became routine, the orderly trial process, fundamental to our jurisprudence, would soon erode away. Another consideration, apart from the merits of a predictable trial pattern, is that new evidence introduced during the jury’s deliberations is likely to be given “ undue emphasis * * * with consequent distortion of the evidence as a whole ” giving rise to the real possibility of prejudice to the party against whom the evidence is offered (Eason v. United States, 281 F. 2d 818, 822). On the other hand, a procrustean *354 rule arbitrarily cutting off all possibility of submitting any evidence after the jury has retired, would be difficult to reconcile with the concept of the trial as a truth-finding process. Thus, except for one jurisdiction which has prohibited the practice by statute (see Beeler v. State, 374 S. W. 2d 237 [Tex.]) the prevailing view permits the trial court some discretionary power to reopen during the jury’s deliberations, particularly where an essential element has been overlooked or evidence newly discovered bears directly on the question of the defendant’s guilt or innocence (see Ann., Submission of Case to Jury — Reopening, 87 ALR 2d 849). And when the request comes from the jury itself, even where the statute otherwise bars reopening the inquiry is permitted, at least to a limited extent (Tarver v. State, 43 Tex. 564).
"When, as was the case in F err one, the jury, of its own accord, requests further evidence, the dangers to be guarded against are generally more apparent than real. For the most part their inquiries are brief and direct* and if the evidence sought receives additional emphasis, it comes from the fact finders themselves and not as the result of counsel’s stratagem.
The risks are not substantially increased when, upon the request of counsel, the case is reopened merely to supply a necessary element which has been overlooked. As a practical matter an element which has been forgotten, although technically essential, should generally be simple to prove and not hotly contested (cf. People v. Ferrone, supra;, Henry v. United States, 204 F. 2d 817, 820). Thus the possibility of seriously disrupting the trial process or unduly prejudicing one of the parties should not materialize.
But when a party moves to recall a deliberating jury to hear newly discovered evidence the dangers become manifest. That such evidence, often highlighted by the drama of discovery, may receive undue emphasis is more than a possibility and perhaps impossible to prevent (see, e.g., United States v. Bayer, 331 U. S. 532, 538; Eason v. United States, 281 F. 2d 818, supra). Claims of surprise by the other side may also be accompanied by requests to rebut, threatening a full resumption of the trial. *355 These considerations are generally outweighed only by a clear showing that essential evidence bearing directly on the defendant’s guilt has come to light, which despite all due diligence was not available at the time of trial (see, e.g., State v. Wolf, 44 N. J. 176, where the main pros.ecution witness recanted, admitting he had “ framed ” the defendant; see, generally, Ann., op. cit., 87 ALR 2d 849). Here of course the court, must proceed with great care by closely scrutinizing all factors in order to exercise a well informed discretion (see United States v. Bayer, supra; Eason v. United States, supra).
The case now before us does not fall readily into any of the recognized categories. Here the additional proof, although prompted by the jury’s inquiries was not admitted at their request. That the prosecutor’s request was conveyed to the jury in terms of an offer does not alter this basic fact. It is also apparent that the evidence did not simply supply an element of the People’s case which had been overlooked, nor can it properly be considered newly discovered evidence. Clearly this was not a case where the prosecutor’s diligence finally disclosed new proof. It was simply an instance of the jury’s probing uncovering a possible weakness in the People’s case. And the evidence which was offered did not relate directly to the defendant’s guilt, but according to the prosecutor’s own candid assessment was directed primarily to a credibility problem.
To permit the trial to be reopened for evidence of this nature poses special problems. Whenever the jury requests that certain testimony be read back to them, they will almost certainly focus on some weakness in the proof, tempting at least one of the parties to offer to reopen to fill the gap. It is hard to imagine a situation in which counsel would be unable to argue that a mere rereading of the testimony is an inadequate substitute for recalling the witness to “ clarify ” the problem. Since in any trial there are innumerable credibility questions, the granting of such motions pose a real threat to the orderly trial process. Equally important is the fact that evidence submitted to the jury under these circumstances is bound to be given great weight even though it bears only indirectly on the main issue.
In sum where the case is reopened to admit additional evidence on a credibility issue, there is an enhanced possibility of dis *356 torting the evidence, and disrupting the trial, with no compelling reason to assume these risks.
Although some authority suggests that reopening to receive proof of this character may be proper when the jury makes the request (Miller v. Commonwealth, 188 Ky. 435) or the untimeliness of the motion is accompanied by a valid excuse (cf. United States v. Bayer, supra; Eason v. United States, supra) neither of those circumstances is present here. On the other hand the prejudice to the defense caused by this irregularity is clear enough on the facts of this case and a new trial should be held.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Rabin and Stevens concur.
Order reversed and a new trial ordered.

 For instance in Ferrone, an abduction case, the jury recalled the victim’s mother simply to inquire as to her daughter’s age.