Meyer, J.
(dissenting). I agree that defendant neither objected to nor asked for a hearing concerning the Trial Judge’s ruling at the beginning of the complainant’s (Brown’s) testimony that the address should be given as “care of the District Attorney’s Office, Brooklyn Municipal Building”. I part company with the majority, however, over its conclusion that the jury’s request to be informed of the area in which the complainant resided was answered by a discretionary refusal to provide the information requested.
*997 The request was “to know where Mr. Brown’s area, not completely the address, of where he resides.” The Trial Judge’s response was “Where Mr. Brown lives is not evidentiary nor a relevant consideration in this case and you may recall when I instructed the reporter to record that Mr. Brown’s address was in the Municipal Building, where the D.A.’s office is, it is not an issue in this trial. It is not an area for the jury to speculate or concern itself about.” The codefendant’s motion for a mistrial on this issue was answered by the court’s statement that “There is no testimony” and codefendant then objected that the court had not said that, and had in fact said that “for the purposes of this trial his address is to be considered the Municipal Building.” Defendant’s attorney then also moved for a mistrial noting that the jury thought Brown’s address “is relevant. I think it is relevant. They want to know where he was at that hour, where he worked, how the house is, the areas he is suppose to be sleeping. I think they have a right, good reasons in their minds. I take exception to it. You didn’t tell them where he resides and I move for a mistrial.”
In fact Brown did not reside in the area of downtown Brooklyn where the Brooklyn Municipal Building is located but in a part of Brooklyn close to Ozone Park. Where he did reside bore materially on his credibility since Brown contended defendant was totally unknown to him at the time and with two other men had kidnapped him when he stopped at a liquor store in Brooklyn on the way from his office on Jamaica Avenue, Queens, to his home, while defendant’s defense was that Brown was a narcotics dealer for whom defendant acted as a collector and who had threatened to “get” defendant for withholding part of the money collected and for knocking Brown down during an argument over collections. Thus, the case against defendant turned on whether Brown was the victim of a kidnapping or himself a criminal and the aggressor. On that issue Brown’s residence address, which would have shown that the liquor store was well beyond his home address and, therefore, could not possibly have been “on the way” from office to home was indeed material, if not vital. Yet, without considering any of the factors concerning reopening, or even asking whether the District Attorney was willing to stipu *998 late, the Trial Judge’s instruction to the jury was that the address was not relevant and that they, should not concern themselves about the address. Thus, the jury had to decide an issue on which they obviously regarded the address as relevant without that information, to defendant’s obvious detriment.
The Olsen and Ferr one cases on which the majority relies are, therefore, not relevant. But if the ruling be deemed one made in the exercise of discretion, I would hold it an abuse of discretion as a matter of law to rule as precipitately as the Trial Judge did. As already noted, credibility was what the trial was all about. The jury obviously attached importance to complainant’s area of residence in deciding that question, so any additional emphasis came “from the fact finders themselves and not as a result of counsel’s stratagem” (People v Olsen, 34 NY2d 349, 354). They asked only the area rather than the actual residence, so a response could have been devised that would reasonably protect the complainant’s safety. The possibility that response would invite rebuttal could properly have been considered had the Trial Judge waited to hear from the prosecutor in this respect. He did not, however, so that possibility is not part of the equation.
True it is that the jury did not, as in People v Ferrone (204 NY 551), request that the witness be recalled, as distinct from requesting the information they asked for, but no significance can be attached to that fact for they had already been told during trial that the address would not be revealed. To differentiate between a jury’s request for unproven facts and a request that a witness be recalled presumes a sophistication on the part of jurors which, were the issue still open for decision (cf. People v Olsen, supra), I would hold nonexistent. To apply Olsen’s reasoning on this point to the circumstances of the instant case, however, is to ignore reality.
True, also, that the data requested went to credibility rather than to an element of the crime itself. But, as already noted, the data requested bore importantly in the jurors’ minds on the complainant’s lack of credibility and that lack was not just an element of the defense, it was the de *999 fense itself. There was, therefore, compelling reason for the Trial Judge to inquire, before ruling, whether the inquiry could not be answered by an agreed upon reply and, if not, whether recall of the witness would necessitate substantial rebuttal evidence.
In sum, the Trial Judge’s answer was not made in the exercise of discretion and misled the jury to defendant’s detriment. In any event, his ruling, if discretionary, was made on what he presumed rather than on a balancing of the interests referred to in Olsen and, therefore, constituted an abuse of discretion as a matter of law. In consequence, I would reverse and grant a new trial.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur in memorandum; Judge Meyer dissents and votes to reverse in an opinion in which Judge Fuchsberg concurs.
Order affirmed.