583 A.2d 1085

**MARYLAND STATE POLICE**

v.

**John M. ZEIGLER.**

**No. 10, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 11, 1991.

Diane Krejsa, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Betty A. Stemley, Asst. Atty. Gen., Pikesville, on the brief), for appellant.

David L. Moore and Byron L. Warnken, Baltimore, for appellee.

Argued before ALPERT, FISCHER and JAMES S. GETTY (Retired, Specially Assigned), JJ.

ALPERT, Judge.

Who would have believed that an impermissible classroom romance would give rise to this appeal in which we are called upon to decide, for the first time in the annals of Maryland administrative law, whether a fact-finding tribunal may adjourn for the purpose of receiving additional evidence once deliberations have commenced?

In other jurisdictions,

there is substantial support for the view that within the discretion of the trial court, the reopening of a civil case for the reception of additional evidence after it has been submitted and the jury have retired to deliberate on their verdict, or after the cause has been submitted to the trial court, is permissible.

75 Am.Jur.2d *Trial* § 156 (1974) (footnotes omitted). It also "lies within the sound discretion of the trial court to reopen a criminal case for the reception of additional evidence even after the jury have retired to deliberate on their verdict." *Id.* § 158.

Clearly, under Maryland law, interrupting the fact-finding process to submit more evidence *before* deliberations have begun is permissible. *See, e.g., Gillespie–Linton v. Miles,* 58 Md.App. 484, 499, 473 A.2d 947 (1984) (case reopened for additional evidence during jury instructions); *Schroder v. State,* 206 Md. 261, 265, 111 A.2d 587 (1955) (case reopened to permit additional evidence after close of argument). Our opinion, *inter alia,* shall address what has not been established previously by Maryland law; that is, whether additional evidence may come in once the fact-finder has begun deliberations.

This appeal arose from an evidentiary hearing held by the Maryland State Police to review charges against the appellee, 1st Sergeant John M. Zeigler ("Zeigler"), for several offenses, including submitting a false report in violation of Chapter 5, Section I, Subsection 15–4 of the Maryland State Police Administrative Manual prohibiting the submission of a false report. The hearing was held pursuant to Section 730 of the Law Enforcement Officers' Bill of Rights ("LEO-BOR"), Md.Ann.Code art. 27, §§ 727–734D (1957).

At the close of the arguments by both sides, Major R.M. Hayman, the chairman of the Hearing Board (Board), a body composed of three lay persons, explained that they were going to recess so the Board could "deliberate and make our findings." They recessed at 3:00 p.m., and deliberated until 6:29 p.m., at which point the hearing was reconvened by the Board. Chairman Hayman stated:

Gentlemen, we have been in deliberation for some time now. We have spent our time reviewing the evidence and testimony that have been given so far in this case. It is the opinion of this board, of each member of this board, that there are additional witnesses who have not been called to this hearing who have evidence or testimony to

give which is pertinent to this matter. We feel that it is in the best interest of the defendant and the agency, and in the best interest of fairness for the board to call additional witnesses.

He then named the additional witnesses to be called. Over the objection of counsel for appellee, the proceedings were adjourned until the additional witnesses could be brought before the Board. It reconvened some three weeks later, on October 18, 1988, after adjourning on September 23, 1988.

After hearing the additional testimony, the Board again deliberated. Two members of the panel found Zeigler guilty of submitting a false report; the third filed a minority report in dissent. Zeigler was found not guilty as to the other charges. The Board then recommended the imposition of a penalty. On November 21, 1988, the Superintendent of the Maryland State Police, Colonel Elmer H. Tippett, rendered a Final Order that imposed a penalty of three days' suspension and the loss of two days regular leave, and ordered that the penalty be stayed for one year, and then vacated if, in the interim, no similar charges arose against Zeigler.

Appellee appealed to the Circuit Court for Baltimore County (Hon. Barbara K. Howe, presiding), which reversed on the grounds that the Board improperly reopened the case for additional testimony. Refusing to remand, the court ordered the agency to make a finding of "not sustained." Appellant then filed a notice of appeal to this court.

On appeal, we are asked to consider:

I. Whether the court below erred in determining that the Hearing Board could not reopen testimony to call an additional witness after the close of the hearing?

II. Whether the statutorily mandated, written findings of fact, produced by a two-member majority of the hearing board, can sustain a verdict of guilty of false report, particularly in light of the written findings of fact, if the

minority report states that there was simply no evidence of either knowledge or an intent to deceive?

III. Whether Maryland law and the Due Process Clause require proof by clear and convincing evidence because (1) Zeigler was charged with false report, dishonesty, deceit, and two crimes, (2) his private interest at stake was loss of his career, and (3) there was risk of litigation imbalance, because of the disparate resources of the parties, and thus risk of an erroneous result?

We hold (1) that it was an abuse of discretion to reopen this case for additional testimony, and (2) that it was a denial of due process to seek further evidence when appellant failed to meet its burden of proof. For reasons hereinafter set forth, we shall affirm the judgment of the trial court.

### The Facts [1]

On December 18, 1986, Sergeant Zeigler, a first sergeant in the Maryland State Police ("MSP"), determined that Corporal Barry Smith, an instructor in the Training Division, was absent without authorization ("AWOL") from his assigned position of Police Academy Duty Officer. Zeigler had stopped by the Academy to pick up some forgotten items and could not locate Smith. He then questioned some trainees, who said that Smith had dismissed his class for the night. Zeigler learned that one of the trainees, Susan Lutz, also was missing from the academy compound. He checked whether anyone had given Smith permission to leave his post, and found that Smith's superiors had not. Captain Patrick Bucher directed Zeigler to write up a report concerning Smith's absence.

In the early morning of December 19, 1986, Sergeant Zeigler prepared a report for his superiors regarding this

---

1. Although the tribunal did not list all the facts in their findings of fact, we shall supplement the facts, using the record and without conceding that they are true or false, so that the reader will have a better understanding of the factual background of this appeal.

misconduct. Later that day, Zeigler discovered a love note that Cpl. Smith had written to Trooper Probationer Susan Lutz, but left it where he found it. Enroute to the graduation held that day, he saw Smith, and asked him where he had been the previous night; Smith said he had been to dinner with Lutz and her family. Smith added that he and Lutz were romantically involved, and planned to get married.

The romance between Smith and Lutz was gradually becoming open knowledge at the academy. Smith previously had given Lutz a kiss during class one day. Then, at the graduation party, the pair were observed kissing and holding hands. Smith's superiors were particularly concerned about his impropriety in giving one of his trainees a kiss in the classroom.[2]

Growing concern about the Smith–Lutz romance prompted Lieutenant J. Scott Whitney to begin an investigation. He told Zeigler to prepare a report. On December 24th, Zeigler signed a typed version of the report he had submitted five days before. Then, on January 7, 1987, Captain Bucher, Whitney's supervisor, directed Zeigler to write a first indorsement[3] to the report that Smith had been required to write concerning his alleged misconduct. This indorsement was directed at whether Smith committed a violation in leaving his post. Zeigler also included some details of Smith's romance with Lutz.

---

**2.** This allegedly violated Chapter 5, Section I, Subsection 8-0 of the MSP Administrative Manual, a regulation prohibiting immoral conduct. That section provides:

Every employee shall maintain a level of moral conduct in his personal affairs which is in keeping with the highest standards of the law enforcement profession. No employee shall be a participant in any incident involving moral turpitude which compromises or has the potential to compromise his ability to perform as a law enforcement officer or as an employee of the Maryland State Police, or causes the Agency to be brought into disrepute.

**3.** An indorsement is added when "needed to either comment on, add to, or detract from the original report...." MSP Administrative Manual, Chap. 3, § I, sub. 7-0.

At some point in February, Zeigler discussed the Smith investigation with Captain Presley, Commander of Staff Inspection. Pursuant to that conversation, Presley checked up on the matter and discovered that although two investigations had occurred, only one had been reported.[4] This led to a Maryland State Police Internal Affairs Unit investigation.

On March 3, 1987, and on March 16, 1987, Zeigler was interrogated by Captain Terrence Sheridan, Commander of the Internal Affairs Unit. When questioned about how many reports he had submitted, Zeigler denied submitting more than one report. Zeigler explained at the hearing that when Sheridan questioned him, Sheridan showed him the first indorsement Zeigler had written. Zeigler was concentrating on that document, and forgot his report of December 24, 1986.

Subsequently, on May 20, 1987, Appellee Zeigler was charged with four offenses in violation of regulations in the MSP administrative manual: (1) submission of a false report,[5] (2) indorsement of an incomplete report,[6] (3) interfer-

---

4. Ultimately, Smith was charged only with being absent during his tour of duty without proper authorization, pursuant to MSP Administrative Manual, Chapter 5, Section I, Subsection 28–4. Thus, he was not charged with immoral conduct stemming from his romance with Lutz. The hint of a coverup concerning his romance led to the subsequent Internal Affairs Unit investigation.

Smith pleaded guilty to the AWOL charge and his penalty was five days loss of leave.

5. Chapter 5, Section I, Subsection 15–4 provides:

All reports submitted by employees of this Agency will be truthful; no employee shall knowingly report or cause to be reported any false information. A clear distinction must be made between reports which contain false information and those which contain inaccurate or improper information. To prove by a preponderance of evidence that one has submitted a false report, evidence must be presented for consideration that such report is designedly untrue, deceitful, or made with the intent to deceive the person to whom it was directed.

6. Chapter 5, Section I, Subsection 15–5 provides:

All reports submitted by employees of this agency will be complete and will not contain improper or inaccurate information."

ence with a case assigned to another officer,[7] and (4) neglect of duty by failing to take appropriate action[8]; thus setting in motion the proceedings underlying this appeal.

## I.

Appellant submits that the Board properly reopened the hearing to take additional testimony from witnesses not previously called by the parties. There is no Maryland law directly supporting—or contradicting—this contention, as, until now, our courts have never addressed the propriety of a factfinder, be it in the administrative or judicial setting, reopening a case after having begun deliberations.

### A. *Re-opening and the Trial Court's Discretion*

■ The hearing that generated this appeal falls under the mandate of the LEOBOR. Adopted by Maryland in 1974, the LEOBOR provides substantive and procedural protections for law enforcement personnel during disciplinary investigations, interrogations, and hearings. *Abbott v. Administrative Hearing Bd.*, 33 Md.App. 681, 682, 366 A.2d 756 (1976). As an administrative agency, the Maryland State Police also is governed by the Administrative Procedure Act, Md.State Gov't Code Ann. §§ 10–201 to –217 (1984).

It is axiomatic under Maryland law that administrative agencies are not constrained by the technical common law evidence rules, but are required to act in accordance with basic tenets of fairness. *Fairchild Hiller Corp. v. Supervisor*, 267 Md. 519, 524, 298 A.2d 148 (1973). We recognize

---

7. Chapter 5, Section I, Subsection 19-2 provides:
   An employee shall not interfere with cases assigned to other employees for investigation without consent, except by order of a superior officer, nor shall he interfere with the operation of a bureau, division, section, or unit.

8. Chapter 5, Section I, Subsection 28-3 provides:
   The failure of a police officer to take appropriate action either on or off duty, on the occasion of a condition deserving agency administrative attention, is considered neglect of duty.

the greater latitude accorded to administrative agencies. Nonetheless, we regard the actions of this administrative tribunal as a violation of its fairness obligation, constituting an abuse of discretion. Because there are no controlling administrative law cases, we must analogize to the judicial context. Had the fact-finding body in a criminal or civil case reopened for more evidence on the grounds that this case was reopened, it would have equalled an abuse of discretion, as indicated by the relevant persuasive authority.

Although the courts in Maryland have not squarely addressed reopening a case for more evidence during deliberations, we have addressed the issue of reopening during other trial phases. The right to reopen a case has long been regarded as a matter of discretion for the trial court. *Guyer v. Snyder*, 133 Md. 19, 22, 104 A. 116 (1918). We have held that it was not an abuse of discretion to reopen during jury instructions, *see Gillespie–Linton*, 58 Md.App. at 499, 473 A.2d 947, nor was it improper after closing argument, *see Schroder*, 206 Md. at 265, 111 A.2d 587.

In numerous cases, other jurisdictions specifically have held that it was not an abuse of discretion to reopen a case during deliberations. Reopening was proper at the behest of a jury, *see, e.g., People v. Ferrone*, 204 N.Y. 551, 98 N.E. 8, 9 (1912); when requested by a party, *see, e.g., Garner v. State*, 97 Ark. 63, 132 S.W. 1010, 1013 (1910); on motion by the court, *see, e.g., Walsh v. Schafer*, 61 A.2d 716, 718–19 (D.C.1948).

It is urged that "the power to reopen a case for additional proof [during deliberations] must be exercised with the utmost caution." *People v. Olsen*, 34 N.Y.2d 349, 357 N.Y.S.2d 487, 490, 313 N.E.2d 782, 784 (1974). "It is obvious that such a practice is not to be encouraged or lightly pursued...." *Ferrone*, 204 N.Y. 551, 98 N.E. at 8. The proper facts must exist to support the use of this power. *Id.* In *People v. Housby*, 26 Ill.App.3d 92, 324 N.E.2d 465 (1975), the court stressed that

While the court has the discretion to re-open the proofs, in the interest of fairness and justice, the integrity of the

judicial system demands that such discretion be exercised only where necessary. As the jury draws closer to a verdict, the reasons mount against re-opening the case. *Id.* 324 N.E.2d at 468.

In *Olsen*, the New York Court of Appeals held that under the facts of the case it was reversible error to reopen during the deliberation stage. 357 N.Y.S.2d at 492, 313 N.E.2d at 786. The court cited some of the specific potential damages involved in reopening. One concern is that the finality of the trial process be preserved. Even more compelling than an orderly trial process is a second consideration, that new evidence introduced during jury deliberations may acquire " 'undue emphasis * * * with consequent distortion of the evidence as a whole.' " *Id.* 357 N.Y.S. at 490, 313 N.E.2d at 784 (quoting *Eason v. United States,* 281 F.2d 818, 822 (9th Cir.1960). This is likely to be prejudicial to the party against whom the evidence is brought. *Olsen,* 357 N.Y.S.2d at 490, 313 N.E.2d at 784; *Eason,* 281 F.2d at 822.

We share the concerns raised by the *Olsen* court. There must be a finality to the fact-finding process. Had the Board asked for new evidence at the close of the arguments, we would not have been disposed to regard that as an abuse of discretion. It is quite a different matter to begin deliberations and then to ask for more evidence. This is at odds with orderly, efficient decision making.

We are persuaded even more by the second consideration raised by *Olsen,* the fear that undue emphasis will be given to the new evidence. Had the fact-finder in this case been a judge, greater reliance could be placed on the judge's ability to evaluate the new evidence objectively, without placing any undue emphasis on its value.[9] Here, the tribunal was composed of three lay persons, and their ability to evaluate the weight of the new evidence was much less certain. We share the appellee's concern that it is peculiar that the Board deliberated for three hours, could not arrive at a

9.  *See Boyd v. State,* 321 Md. 69, 81, 581 A.2d 1 (1990).

simple majority of two out of three necessary to find Zeigler guilty of any charges, yet was able to do so upon hearing the additional evidence.

Furthermore, in expressing its wish to hear additional testimony, the Board gave almost no explanation. It merely stated that there were "additional witnesses who have not been called ... who have evidence or testimony to give which is pertinent to this matter. We feel that it is in the best interest of the defendant and the agency, and in the best interest of fairness for the board to call additional witnesses." Although counsel for the appellee repeatedly questioned this extraordinary action, the Board refused to articulate its reason.

We hold that given the posture of the case, it was an abuse of discretion for the Board to reopen for additional evidence during deliberations.[10]

### B. *Re-opening and Due Process of the Law*

■ Contending that in re-opening the case the Board violated due process and fundamental fairness, Zeigler argues that the "Board made a ruling that permitted the fact-finder to obtain additional evidence after it was unable to find guilt on the evidence before it." We agree and shall explain.

Judge Barbara Kerr Howe, in her "Opinion and Order," stated in pertinent part:

> The Board as an independent fact-finder should have sustained or failed to sustain the charges against the appellant based on the evidence presented by the appellee, the Maryland State Police, and the appellant. The failure of the Hearing Board to return decisions on each of the counts after initial deliberations forces this court to conclude that the charges were not sufficiently proven by

---

**10.** On October 18, 1988, when the Board reconvened, it called its single additional witness, Lieutenant Colonel James A. Jones. His testimony centered on the investigation of Smith's alleged misconduct. His only reference to Zeigler was his statement that Zeigler admirably handled the investigation of Smith's absence without authorization.

the appellee and, therefore, the court declines to remand this case for an administrative hearing.

It is beyond cavil that the burden of proof rested upon the appellant who had the affirmative duty of establishing Zeigler's guilt as to the charges placed against him. Appellant had the burden not only of producing legally sufficient evidence of guilt but also the burden of persuading the trier of the fact that that evidence was of sufficient quality, quantity, and force as to justify a finding of guilt. *See* J. Stein, *Trial Handbook for Maryland Lawyers* § 9.9, at 133 (2d ed. 1986). The trial board, sitting in its capacity of fact-finder, was the sole judge of the effect or value of the evidence that had been presented to it. 88 C.J.S. *Trial* § 208 (1955). *See also Travelers Insurance Company v. Needle*, 171 Md. 517, 521, 189 A. 216 (1937). If, after deliberation, a majority of the tribunal, as fact-finders, were not convinced of Zeigler's guilt based on the evidence before them, then due process of the law and fundamental fairness demanded that they find him not guilty, as obviously the quantity and quality of the evidence was not sufficient to carry the burden of persuasion. If there was doubt as to Zeigler's guilt, it was unfair to seek further evidence, especially in light of the fact that his attorney objected. As stated by one of the learned treatises:

> If life, liberty, or property is at stake, the individual has the right to a fair procedure. The question then focuses on the nature of the 'process' that is 'due.' In all instances the state must adhere to previously declared rules for adjudicating the claim or at least not deviate from them in a manner which is unfair to the individual against whom the action is to be taken.

J. Nowack, R. Rotunda & J. Young, *Constitutional Law*, § 15–1, at 527 (1983).

Zeigler was charged, *inter alia*, with filing a false report, a charge that has certain criminal ramifications. Although we have stated that "[n]othing in section 730 [of the LEO-BOR] requires, or suggests for that matter, that it is the equivalent of a criminal proceeding," *Widomski v. Chief of*

*Police,* 41 Md.App. 361, 379, 397 A.2d 222 (1979), whether the proceedings be criminal or civil in nature, certainly the process that was afforded here deviated from "previously declared rules" for adjudicating similar claims.

The essential guarantee of the due process clause is that of fairness. The procedure must be fundamentally fair to the individual in the resolution of the factual and legal basis for the government actions which deprive him of life, liberty, or property. While different situations may entail different types of procedures, there is always the general requirement that the government process be fair and impartial.

Nowak, Rotunda & Young, *supra,* § 15–1 at 557–58.

Due process of the law and fundamental fairness mandate that where evidence is not sufficient in the eyes of the fact-finder to meet the burden of persuasion required on that issue, then the proponent of that issue has failed to meet its burden and the deliberations must cease. The fact-finder ought not solicit further evidence.

As did the trial court, we decline to remand this case for an administrative hearing and affirm the judgment below.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.