599 A.2d 832

**James Lionel Lambert DYSON**

v.

**STATE of Maryland.**

**No. 174, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Dec. 26, 1991.

652

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Argued before ROSALYN B. BELL, FISCHER and DAVIS, JJ.

FISCHER, Judge.

Appellant, James Lionel Lambert Dyson, appeals convictions obtained against him in the Circuit Court for Prince George's County. After trial by a jury, appellant was convicted of second degree rape and battery. For these offenses, he was sentenced to two consecutive terms of twenty years imprisonment.

Before this Court he raises issues as follows:

1. Did the trial court err in allowing the State to recall a witness after jury deliberations had begun?

2. Was the appellant's constitutional right to cross-examine the victim violated?

3. Was the appellant's right to be present at every stage of the trial violated?

4. Did the trial court err in imposing a consecutive sentence for assault and battery?

In the early morning hours of May 13, 1988, the victim was assaulted and raped in her St. Mary's County apartment. The perpetrator escaped. On June 2, 1988, the victim, while on a street in Lexington Park, Maryland, recognized a male whom she believed to be her attacker. Appellant was arrested four days later, and the victim was subsequently shown an array of eight photographs. The victim testified concerning the photographic array:

It looks like him. His lips and his face protrudes like that. He was wearing a cap the last time I saw him. It is difficult with the photograph, but it looks like him. None of the others are him.

At trial, however, the victim was able to make a more positive identification of appellant as her attacker.

The victim further testified that, on the date she was raped, certain items were stolen from her apartment. Those items included a small stereo radio, which the victim referred to as a music box, a watch, and a purse. The State recovered the radio from Margaret Kuykendall who testified that she obtained it from appellant sometime in the middle of May, 1988.

At trial, the victim was asked if she could identify the radio. She responded, "If I can turn it on." The State then inquired why the victim needed to turn on the radio in order to identify it. She explained, "Well the band on the radio is broken and we took it apart and to get it to work again we had to take it off of the—there's a little red mark that tells you what station it's on.... Well, that no longer moves because we had to disconnect it to tie it together to make it long enough so we could get different stations."

The victim also identified a watch introduced into evidence as "just like" the watch stolen from her. A witness, Sheila Rogers, testified that appellant gave her the watch

between 7:00 a.m. and 8:00 a.m. on May 13, 1988. Rogers later gave it to Margaret Kuykendall who subsequently turned the watch over to Maryland State Trooper Maynard Miller.

After beginning its deliberations, the jury sent a note to the court which read:

> We the jurors have not decided a verdict on any of the four charges. May we be excused? Also one of the jurors is interested in the victim showing us the knot in the radio.

The trial judge then asked the victim if she could show the jurors what she was referring to when she described a knot in the band. The victim replied, "[Y]es," and defense counsel noted an objection to any contemplated procedure whereby the victim would be asked to point out anything to the jury. The trial judge then stated:

> All right. This radio is in evidence. We did have a request early in the trial. We had a note come from the jurors asking if they would be allowed to—I don't remember. I'm paraphrasing—if they would be allowed to look at the place in the radio that the victim told us about. We sent screwdrivers in there. Apparently they don't know what it is they're looking for and I'm inclined to allow the radio to be opened and to have that area pointed out without any verbal communication at all. Do you object?

Defense counsel noted an objection, and the court said, "Well, that's what we're going to do."

When the proceedings reconvened at 9:30 a.m. the following morning, the court informed the jury that the victim would be permitted to open the box and point to the area. The court also ruled that no questions to the victim would be permitted. Defense counsel again objected to the procedure. After opening the radio, the victim was permitted to put her finger on the knot about which she had previously testified.

## I.

Did the trial court err in allowing the State to recall a witness after jury deliberations had begun?

■ We have been unable to find, nor have we been directed to, any Maryland appellate criminal cases in which evidence was received after the jury had begun its deliberations. We are aware of one Maryland case on the subject, *State Police v. Zeigler,* 85 Md.App. 272, 583 A.2d 1085 (1991), involving an administrative hearing in which evidence was received after the Board had begun its deliberations. In *Zeigler* the Board concluded the introduction of evidence, heard closing arguments, and deliberated for approximately three and one-half hours. The Board then decided that it needed to hear from additional witnesses. After receiving this testimony, the Board found Trooper Zeigler guilty of submitting a false report. The circuit court reversed the Board. In affirming the circuit court's ruling, we opined:

> There must be a finality to the fact-finding process. Had the Board asked for new evidence at the close of the arguments, we would not have been disposed to regard that as an abuse of discretion. It is quite a different matter to begin deliberations and then to ask for more evidence. This is at odds with orderly, efficient decision making.

*Zeigler,* 85 Md.App. at 281, 583 A.2d 1085.

Other jurisdictions facing this question have reached conflicting results. In *State v. Allen,* 205 Conn. 370, 533 A.2d 559 (1987), the State concluded its case, and the defendant moved for judgment of acquittal on the charge of possession of a weapon (pistol) in a motor vehicle. The defendant claimed that the State had failed to introduce evidence that the barrel of the gun was under twelve inches in length. The trial court then permitted the State to reopen its case and supply the missing evidence. The Supreme Court of Connecticut reversed, holding that the judge abused his discretion in allowing the State to reopen its case after the

defendant had pointed out the State's shortcomings. The court was careful to limit its holding to cases where the State has introduced insufficient evidence, and this evidentiary gap has been specifically identified by the defendant.

In *People v. Olsen*, 34 N.Y.2d 349, 357 N.Y.S.2d 487, 313 N.E.2d 782 (1974), the court permitted the State to recall a prosecution witness for the purpose of giving additional testimony. The Court of Appeals of New York reversed. In its discussion, the court said:

> There are obvious reasons why at this stage (after the case has been submitted to the jury) the power to reopen a case for additional proof must be exercised with utmost caution. One reason of course is that at some point the trial must come to an end (cf. *Mary v. State*, 5 Mo. 71) If requests to reopen were casually granted and became routine, the orderly trial process, fundamental to our jurisprudence, would soon erode away. Another consideration, apart from the merits of a predictable trial pattern, is that new evidence introduced during the jury's deliberations is likely to be given 'undue emphasis ... with consequent distortion of the evidence as a whole' giving rise to the real possibility of prejudice to the party against whom the evidence is offered. (*Eason v. United States*, 281 F.2d 818, 822 [9th Cir.1960]) On the other hand, a procrustean rule arbitrarily cutting off all possibility of submitting any evidence after the jury has retired would be difficult to reconcile with the concept of the trial as a truth-finding process. Thus, except for one jurisdiction which has prohibited the practice by statute (see *Beeler v. State*, 374 S.W.2d 237 [Tex]) the prevailing view permits the trial court some discretionary power to reopen during the jury's deliberations, particularly where an essential element has been overlooked or evidence newly discovered bears directly on the question of the defendant's guilt or innocence. (See Ann., Submission of Case to Jury—Reopening, 87 ALR 2d 849). And when the request comes from the jury itself, even where the

statute bars reopening, the inquiry is permitted, at least to a limited extent (*Tarner v. State,* 43 Tex. 564).

*Olsen,* 34 N.Y.2d at 354–355, 357 N.Y.S.2d at 490, 313 N.E.2d at 784–785.

■ The prevailing rule is that the reopening of a case to receive additional evidence after submission of the case to the jury is a matter left to the sound discretion of the trial judge. *Cooper v. The State,* 79 Ala. 54 (1885); *Broglan v. State,* 23 Ala.App. 219, 123 So. 109 (1929); *Whittaker v. State,* 173 Ark. 1172, 294 S.W. 397 (1927); *Garner v. State,* 97 Ark. 63, 132 S.W. 1010 (1910); *Commonwealth v. Ricketson,* 46 Mass. 412, 429 (1843) ("The order of receiving evidence is adopted for convenience, and may be varied, according to particular circumstances."); *Stark v. Circle K. Corporation,* 230 Mont. 468, 751 P.2d 162 (1988); *State v. Foster,* 28 N.M. 273, 212 P. 454 (1922) ("It was concededly within the power and discretion of the court to recall the jury, reopen the case, and receive the testimony, and it certainly would have been in the interest of justice to do so." Notwithstanding, the Supreme Court of New Mexico affirmed the trial court's refusal to receive additional evidence, holding that it was a matter within the discretion of the trial court.); *People v. Ferrone,* 204 N.Y. 551, 98 N.E. 8 (1912); *Bertha Zinc Company v. Martin's,* 93 Va. 791, 22 S.E. 869 (1895); *State v. Littleton,* 77 W.Va. 804, 88 S.E. 458 (1916) (After a case is closed and submitted to a jury, the case will not be reopened unless good cause is shown. What constitutes good cause is left to sound discretion of trial judge.).

In *Zeigler,* 85 Md.App. at 281, 583 A.2d 1085, Judge Alpert, writing for this Court, stated, "We are persuaded even more by the second consideration raised by *Olsen,* the fear that undue emphasis will be given to the new evidence." For various reasons, however, the jury in the case *sub judice* was much less likely to afford undue emphasis to the subsequent evidence regarding the radio. The evidence received, supplementary to evidence already before the jury, was of a minimal nature and was not new or

unanticipated. It was simply a further clarification of previously introduced evidence. We believe that the instant case is easily distinguished from *Zeigler.* In *Zeigler,* three new witnesses testified after deliberations had commenced. Fear that undue emphasis could be given to the testimony of those three witnesses was apparent. The same situation did not occur here. We find, accordingly, that the trial judge did not err in reopening the evidence to permit the victim to point to the knot in the radio band.

## II. & III.

Was appellant's constitutional right to cross-examine the victim violated?

Was appellant's right to be present at all stages of the trial violated?

Appellant avers that, when the victim pointed to a knot that she had tied in the band of the radio, the victim was, in effect, testifying. Since the judge indicated at the outset that no questions of the victim would be allowed, the appellant contends he was denied the right to cross-examine.

■ Prior to the victim pointing to the knot, counsel for appellant addressed the court as follows:

> One of the reasons why I believe that this procedure is so inappropriate, especially given the difficulty that the victim and the State's Attorney have encountered in taking this off, is had I known about this opportunity earlier on, and this was going to be an issue, and had it been done during the State's case at some point, then certainly I could have cross examined the victim with regard to the absence of pry marks and difficulty in getting the front of the box off.

While "cross-examine" was mentioned, it was in the context of what counsel would have done had the victim been asked to point to the knot during the initial presentation of the State's case. Counsel, however, did not object to the denial of cross-examination during the reopening of the

case. It is clear that appellant's objection specifically concerned the legality of the reopening of the case and the taking of additional testimony. The objection was not directed toward the alleged denial of cross-examination. Had counsel wished to cross-examine the victim, he should have attempted to do so when the victim pointed to the knot in the band. *Prout v. State*, 311 Md. 348, 535 A.2d 445 (1988); *White v. State*, 66 Md.App. 100, 115, 502 A.2d 1084 (1986). His failure to make such an attempt clearly constituted a waiver. Md. Rule 8–131(a).

After the victim's testimony during the State's case in chief, defense counsel cross-examined her at great length. Included in the cross-examination was thorough questioning about the radio and the means by which the victim was able to identify it. The only area which counsel did not reach on cross-examination was the absence of pry marks and the time employed in removing the cover of the radio. It cannot reasonably be asserted that these matters were of any importance in the identification of the radio by the victim.

■ Appellant also contends the court erred in failing to have appellant present at the time the victim pointed to the knot in the band. Prior to bringing the jury into the courtroom, the trial judge asked defense counsel, "Do you want your client brought in?" Defense counsel replied, "If the only thing that is going to be done is we are going to hand this to the jury and allow the victim to point, then I don't believe it is necessary for the defendant to be here." Appellant now contends that he was entitled to be present at every stage of the trial and that he was not personally given the option of being present.

It is clear that defense counsel waived appellant's right to be present. In *Williams v. State*, 292 Md. 201, 219, 438 A.2d 1301 (1981), the Court of Appeals revised its earlier holding with respect to counsel's ability to waive his or her client's rights:

With respect to all criminal trials, or parts of trials, taking place after the issuance of our mandate in this case, an effective waiver of the defendant's right to be present at every stage of the trial will not always require a personal waiver by the defendant. Where the right to confrontation is not implicated, and where there is involved no other right requiring intelligent and knowing action by the defendant himself for an effective waiver, a defendant will ordinarily be bound by the action or inaction of his attorney.

Appellant's counsel recognized that the right to confrontation was not implicated when he said, "If the only thing that is going to be done is we are going to hand this to the jury and allow the victim to point, then I don't believe it's necessary for the defendant to be here." Also, had appellant's counsel intended to cross-examine the victim, as he now asserts, he would not have proceeded in the absence of his client.

## IV.

Did the trial court err in imposing a consecutive sentence for assault and battery?

■ The information lodged against appellant contained six counts: first and second degree rape, first and second degree sexual offense, assault and battery and carrying a deadly weapon with the intent to injure another. At the conclusion of the trial, four charges were submitted to the jury, first degree rape, second degree rape, assault and battery [1] and carrying a deadly and dangerous weapon openly with the intent to injure another.

The jury returned verdicts of guilty on second degree rape and assault and battery. Not guilty verdicts were rendered as to first degree rape and carrying a deadly weapon with intent to injure another. The trial judge

---

**1.** Assault and battery are actually two separate offenses, but they were submitted to the jury in one count.

imposed a sentence of twenty years on the second degree rape conviction and a consecutive term of twenty years for assault and battery. Appellant contends the assault and battery conviction should merge into the second degree rape conviction.

We agree. It is clear that there was testimony of a number of assaults and batteries which could serve to support a conviction for assault and battery. For example, there was testimony by the victim of a slap across the face, physical carrying of her from the kitchen to the hallway, a forced consumption of rum, a forced requirement that she douche with baby lotion, anal sex, cunnilingus and fellatio. The trial court instructed the jury on the offenses submitted for its disposition. The jury, however, was not instructed on the particular acts which were alleged to constitute the assault and battery. In addition, the jury was not instructed that it must find that the assault and battery was separate and distinct from the force used to accomplish the rape.

The State argues that the facts necessary to show the battery were not essential ingredients of the rape. The State further contends that where a defendant commits separate criminal acts against a victim, he may be separately charged and punished for each offense. *State v. Boozer*, 304 Md. 98, 497 A.2d 1129 (1985); *Holland v. State*, 77 Md.App. 252, 549 A.2d 1178 (1988). As noted by appellant, the issue is not whether the jury, after proper instructions, could have found an assault and battery separate and distinct from the rape. Rather, the issue is whether the jury could have found an assault and battery in the absence of specific instructions requiring the jury to determine whether there was an assault and battery apart from that associated with the rape. In the absence of such instructions, appellant argues the offenses must be merged, because the defendant is entitled to the benefit of the doubt.

" '[T]he proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible

to tell which ground the jury selected.'" *Nightingale v. State,* 312 Md. 699, 709, 542 A.2d 373 (1988) (quoting *Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356, 1371 (1957)). This is precisely what occurred in the present case. The jury could have found appellant guilty of assault and battery for conduct which must be merged into the rape or for conduct that is clearly separate and distinct from the rape. The court's instructions, however, failed to insure that the jury would only find a verdict of guilty of assault and battery for conduct occurring separately from the rape. We must, therefore, vacate the sentence for assault and battery, as the conviction for assault and battery in the manner obtained here merges with the conviction for second degree rape.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR RESENTENCING.

COSTS TO BE PAID ONE-HALF BY PRINCE GEORGE'S COUNTY AND ONE-HALF BY APPELLANT.