303 Ga. 11
FINAL COPY

S17A1756. WALTON v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Kynodious Walton appeals his convictions for felony murder and aggravated assault with a deadly weapon, among other crimes, contending that he received ineffective assistance of trial counsel and that the trial court made certain erroneous evidentiary rulings.[1] For the reasons

---

[1] On April 13, 2015, Walton was indicted for crimes committed against two people. With regard to the shooting death of Bryant Phillips, Walton was indicted for malice murder, two counts of felony murder predicated on aggravated assault and possession of a firearm by a convicted felon, aggravated assault with a deadly weapon, criminal attempt to commit armed robbery, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. With regard to the shooting of Byron Phillips, Walton was indicted for criminal attempt to commit armed robbery, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. Following a jury trial, Walton was found guilty of all counts except malice murder and the two counts of criminal attempt to commit armed robbery. Thereafter, Walton was sentenced to two concurrent life sentences for the two counts of felony murder, twenty consecutive years for the aggravated assault of Byron Phillips, and five consecutive years for each of the two counts of possession of a firearm during the commission of a felony. The remaining counts were merged for purposes of sentencing. As discussed in Division 5, infra, this sentence was improper and must be vacated. Walton filed

set forth below, we affirm Walton's convictions, vacate his sentence, and remand this case for resentencing.

1. In the light most favorable to the verdict, the record shows that Dennis Igidi lived with his long term girlfriend, Maritza Chick. In the fall of 2012, however, Igidi was in the process of moving out of their shared home. On October 28, 2012, Igidi sent his mechanic to the house to pick up his lawn equipment, but the mechanic discovered that someone was already taking the equipment. The mechanic alerted Igidi, who immediately drove to the house with his three-year-old daughter. Igidi found Walton loading the equipment onto a truck. Walton told Igidi that he had bought all of the equipment for $450 from Chick. Igidi asked to repurchase the equipment, but told Walton that he needed an hour to get sufficient cash. Igidi then called Byron and Bryant Phillips, who were brothers, and requested their assistance. The Phillips brothers complied.

Once the Phillips brothers arrived, Walton drove away, and Igidi

_____

a motion for new trial on April 21, 2015, and amended it on February 23, 2017 and March 22, 2017. The motion for new trial was denied on April 21, 2017, and, after Walton filed a timely notice of appeal on May 17, 2017, his case was assigned to the August 2017 Term of this Court and orally argued on November 13, 2017.

followed, with the Phillips brothers trailing. Igidi testified that he wanted to determine where Walton was going to store the equipment. After five to ten minutes of driving, Walton parked near his cousin's house. Igidi parked behind him, and the Phillips brothers parked behind Igidi. When Igidi got out of the car, with his daughter still inside, Walton jogged over to a group of men. Igidi took a few steps, and was then rushed by Walton and his compatriots. Walton grabbed a gun, cocked it, and said to his cohorts, "Run them pockets," which Igidi understood to be an instruction to rob him. Igidi saw the other men had guns, as well. Igidi, however, was unarmed.

When the Phillips brothers got out of their car, Byron heard loud arguing about money and was then rushed. Byron told Walton's cohorts that they were just there for the equipment. Byron and Bryant tried to get back in their car, but, before they could, two of Walton's crew approached, and one of them reached into Byron's pockets and asked, "What you got?" They grabbed Byron's pistol from his pocket, and then drew their weapons and started shooting. Byron and Igidi, who decided to flee the scene, saw Walton shooting a gun. Byron was shot in the arm, and, as he fell to the ground, he also saw Bryant drop. Police were called to the scene, and they found Bryant lying in the street. Bryant died as a

3

result of a gunshot wound to the chest from several feet away.

This evidence was sufficient to enable the jury to find Walton guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Walton contends that trial counsel rendered ineffective assistance by failing to review a police report indicating that Igidi and Chick had a violent disagreement over Igidi's possessions on the night before Bryant's murder.

> In order to succeed on his claim of ineffective assistance, [Walton] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

The record shows that, at the beginning of trial, the State moved in limine[2]

_____

[2] The record indicates that the State initially made an oral motion and followed up with a written motion.

4

to exclude any reference to a domestic dispute between Igidi and Chick that occurred on the night before the shooting. The specifics of this confrontation were contained in a police report that was part of the State's discovery package. In response to the State's motion, trial counsel responded that she had no "desire or interest in going into [the] dispute," even though she wanted to elicit information about the events leading up to the shooting in a general manner. Upon further questioning from the trial court, the State characterized the police report as follows:

> Ms. Chick and Mr. Igidi get into an argument, because they're breaking up, over him wanting to get his stuff. She calls the police on him. The police respond. She makes some allegations against him that include him threatening her. I don't know that there's any charges that have come from that.

Thereafter, trial counsel made no objections, and the trial court granted the motion in limine. At that time, trial counsel had never seen or read the report.[3]

A review of the record shows that the police report was far more detailed than the State's in-court summary. The report contained allegations from Chick

---

[3] At the hearing on Walton's motion for new trial, trial counsel questioned whether she had ever initially received the report in discovery. Nonetheless, she admitted that she had not read the report and she made no request to review it at the time she agreed to its exclusion.

that Igidi became extremely upset and violently threatened her with a gun and a knife. At the motion for new trial hearing, Walton's trial counsel admitted that she was unaware of this information at the time the State presented its motion in limine.

Pretermitting the question of whether Walton's trial counsel performed deficiently,[4] Walton must still show prejudice. Under the facts of this case, he cannot do so. The record shows that trial counsel cross-examined Igidi as to how upset he was when he confronted Walton about the lawn equipment. Trial counsel also brought forth evidence that Igidi was facing firearms charges with regard to a previous case. Furthermore, on cross-examination, Igidi admitted that he told one of the Phillips brothers, "This bitch[, Chick,] done sell my stuff," and that he was angry. Additionally, trial counsel elicited from Walton's girlfriend, Shantae, on direct examination that Igidi was "very aggressive," "very upset," and "very angry" when he confronted Walton on the day of the

---

[4] Walton maintains that it was unreasonable for trial counsel to fail to use the police report to counter the State's evidence that Walton shot first and that Igidi would not commit acts of violence in the presence of his daughter. Of note with regard to this argument, which we ultimately do not reach, the police report contained no information about the whereabouts of his daughter at the time of his alleged confrontation with Chick.

shooting. Therefore, the jury did receive evidence that Igidi was extremely passionate and aggressive regarding the lawn equipment, and that he was angry at Chick for the way she handled the situation. Under these circumstances, and recognizing that the crimes in this case arose from a confrontation between Igidi and Walton, not Igidi and Chick, the information contained in the police report was largely cumulative of information already heard by the jury. As such, Walton was not ultimately prejudiced by the exclusion of the police report, even assuming that an effort by Walton's counsel to admit the report would have been successful.  See Wilson v. State, 297 Ga. 86, 88 (2) (772 SE2d 689) (2015) ("The failure of trial counsel to object to such cumulative evidence does not support a claim of ineffective assistance of counsel.") (citation omitted).

3. Walton argues that the trial court erred by excluding evidence that Byron Phillips was a member of the Crips street gang. We disagree.

Because Walton did not object to the trial court's ruling regarding this evidence, his argument in this regard is subject to a plain error analysis.  See OCGA § 24-1-103 (d). In order to satisfy the test for plain error,

> [f]irst, there must be an error or defect—some sort of deviation from a legal rule– that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the

7

legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Citations, punctuation, and emphasis omitted.) State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

The trial court did not commit plain error by excluding evidence that Byron Phillips was a member of the Crips street gang because, under the facts of this case, any such affiliation was irrelevant and had no connection to the shooting. Walton speculates that Igidi called Byron because he knew that he was a Crips member and that he expected Byron to be armed. Walton, however, has shown no actual evidence that this was Igidi's reasoning. In addition, Walton provides nothing to indicate that the motivation for the shooting, or anything related to the shooting for that matter, was related to street gang activity. Therefore, the trial court did not err by excluding the evidence that Byron was affiliated with the Crips. See OCGA § 24-4-401 ("'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of

8

consequence to the determination of the action more probable or less probable than it would be without the evidence."); OCGA § 24-4-404 (b) ("Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith."). There was no plain error.

4. Finally, Walton contends that the trial court erred by denying his request to reopen evidence after deliberations had begun in order to allow him to introduce evidence of a statement made by Igidi to a cellmate, Eugene Trammell. Applying the appropriate deference to the trial court, we disagree.

It is well settled that the decision to reopen evidence is a matter that rests within the sound discretion of the trial court. See, e.g., Carter v. State, 263 Ga. 401, 402 (2) (435 SE2d 42) (1993); Britten v. State, 221 Ga. 97, 101 (4) (143 SE2d 176) (1965) ("It is within the discretionary power of the court to allow a witness to be sworn after the evidence on both sides has been announced closed and the argument has been commenced. . . .") (citation and punctuation omitted).

> There are obvious reasons why[, after deliberations have begun,] the power to reopen a case for additional proof must be exercised with utmost caution. One reason of course is that at some point the trial must come to an end. . . . If requests to reopen were casually granted and became routine, the orderly trial process, fundamental

9

to our jurisprudence, would soon erode away. Another consideration, apart from the merits of a predictable trial pattern, is that new evidence introduced during the jury's deliberations is likely to be given "undue emphasis . . . with consequent distortion of the evidence as a whole" giving rise to the real possibility of prejudice to the party against whom the evidence is offered. . . . On the other hand, a procrustean rule arbitrarily cutting off all possibility of submitting any evidence after the jury has retired, would be difficult to reconcile with the concept of the trial as a truth-finding process.

(Citations omitted.) State v. Roberts, 247 Ga. 456, 457-458 (277 SE2d 644) (1981), quoting People v. Olsen, 34 NY2d 349 (313 NE2d 782) (1974).

The evidence at trial was closed on Thursday, April 16, 2015, and the jury began its deliberations that afternoon. The following morning, Walton requested that the court reopen the record to permit the testimony of Trammell. Walton proffered that Trammell would testify that Igidi told him that Bryant Phillips shot first, and that Igidi allegedly told Trammell about the events in detail. The trial court decided not to reopen the record. Walton then moved for a mistrial, which was denied. The trial court reasoned that the trial needed to come to an end, that Igidi had already been excused as a witness, and that the jury would have placed undue emphasis on Trammell's testimony. The trial court further found that the proffered testimony was mostly cumulative of other evidence and only served to challenge the credibility of Igidi, which had already been

10

accomplished by trial counsel through cross-examination. These conclusions were well within the trial court's discretion. There was no abuse of discretion. See Roberts, supra.

5. The trial court sentenced Walton as follows: two concurrent life sentences for the two counts of felony murder, twenty consecutive years for the aggravated assault of Byron Phillips, and five consecutive years for each of the two counts of possession of a firearm during the commission of a felony. The remaining counts were merged for purposes of sentencing. The trial court erred by sentencing Walton on both counts of felony murder. When a defendant is found guilty on multiple counts of murder for a single homicide, all additional counts beyond one for which the defendant is sentenced are surplusage and must be vacated. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). In this case, therefore, Walton's sentence must be vacated, and this case must be remanded for resentencing, in order to allow the trial court to properly sentence Walton for felony murder on a single count and to reconsider sentencing in light of the remaining predicate offense for the surplus count of felony murder which must be vacated by operation of law.

Judgment affirmed, sentence vacated, and case remanded for resentencing. All the Justices concur.

Decided February 5, 2018.

Murder. DeKalb Superior Court. Before Judge Johnson.

Ross & Pines, Andrew S. Fleischman, for appellant.

Sherry Boston, District Attorney, Lenny I. Krick, Anna G. Cross, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.