**Donovan J.R. BLISSETT, Petitioner–Appellant,**

v.

**Eugene S. LEFEVRE, Superintendent, Clinton Correctional Facility, Respondent–Appellee.**

**No. 1259, Docket 89–2030.**

United States Court of Appeals, Second Circuit.

Argued July 19, 1990.

Decided Jan. 22, 1991.

Jane Simkin Smith, Millbrook, N.Y., for petitioner-appellant.

Allen M. Hecht, Asst. Dist. Atty., Bronx, N.Y. (Robert T. Johnson, Dist. Atty. and Billie Manning, Asst. Dist. Atty., of counsel), for respondent-appellee.

Before WINTER, MAHONEY and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Petitioner Donovan J.R. Blissett, appeals from an order of the United States District Court for the Northern District of New York (Howard G. Munson, Chief Judge), dated December 27, 1988, adopting the recommendation of United States Magistrate Daniel Scanlon, Jr. and denying after reconsideration a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who was convicted of murder in the second degree, claims he was denied a fair trial because 1) the trial court responded inadequately to the jury's inquiry into the immunity status of the state's key witness, Devon Ashman; 2) the prosecutor improperly attempted to introduce certain evidence; and 3) the prosecutor declined to grant immunity to a defense witness. We find these claims to be without merit and affirm the denial of the writ.

## BACKGROUND

In March, 1979, the Philadelphia Record Store on Eastchester Road in the Bronx was being used as a front for a marijuana retailing operation. According to Capel Brownie and Devon Ashman, who testified for the government under grants of immunity, Caryl Davidson, Ashman, and an unidentified individual known only as "Dennis" ran the store and divided the marijuana profits between them by taking all of the profits on assigned days of the week, each of which was termed by them as "a day in the store." Brownie and Delroy Williams worked in the store but were not assigned marijuana profits. Petitioner was associated with the foregoing people. The murder victim, Daniel Bowen, previously owned the store, but after he had been deported to Jamaica, Davidson had taken over.

On the afternoon of March 28, 1979, Bowen, who had recently returned from Jamaica, discussed his request for a day in the store with Davidson, Williams and petitioner. That evening in the store, Davidson, Williams, Bowen, and petitioner, all of whom were separately armed, told Ashman that they wanted to use Ashman's apartment to discuss giving Bowen a day in the store. All five repaired to Ashman's apartment where it became apparent, at least to Ashman, that Davidson, Williams and petitioner did not want to give Bowen a day in the store. Ashman stepped into the kitchen for a glass of milk and, upon returning to the room where the others were talking, saw Davidson, Williams and petitioner each shoot Bowen. Ballistics evidence corroborated Ashman's testimony that three individuals were involved in the shooting.

Two weeks later, petitioner told Brownie that he had "bumped" Bowen, because Bowen had killed petitioner's cousin. Before trial, petitioner told Ashman not to

come to court and that he would not be prosecuted if Ashman did not testify.

On August 17, 1979, petitioner was arrested by Police Officer Philip Smith, who was investigating an unrelated armed robbery, following a high-speed car chase during which petitioner side-swiped the officer's unmarked police car. After petitioner was arrested for reckless endangerment and weapon charges, he was then turned over to the case agent assigned to investigate the Bowen murder, Detective Rosenthal, who arrested him for that crime.

On March 26, 1980, a jury convicted petitioner of murder in the second degree. On April 15, 1980, petitioner moved to set aside the verdict on the grounds of newly discovered exculpatory evidence. The trial court held a hearing, at which petitioner presented additional witnesses. However, during the hearing, the trial judge denied petitioner's request that the government be ordered to grant immunity to a defense witness, Anthony Moore, who had asserted his Fifth Amendment rights against self-incrimination. Following the hearing, the trial judge denied petitioner's motion to set aside the verdict. On July 3, 1980, petitioner was then sentenced to a term of imprisonment of seventeen years to life.

On direct appeal from the conviction, petitioner asserted that the evidence at trial was insufficient to support his conviction and that he had been denied a fair trial (1) by the trial court's refusal to inform the jury that Ashman had testified under a grant of immunity; (2) by the prosecutor's eliciting from a witness that petitioner had been arrested by an officer investigating an unrelated armed robbery; and (3) by the prosecution's refusal to grant immunity to Moore at the post-conviction hearing. The Appellate Division unanimously affirmed petitioner's conviction without opinion. *People v. Blissett*, 95 A.D.2d 986, 464 N.Y. S.2d 613 (1st Dep't 1983). The New York Court of Appeals denied leave to appeal. *People v. Blissett*, 60 N.Y.2d 589, 467 N.Y. S.2d 1035, 454 N.E.2d 130 (1983).

In March, 1984, petitioner filed a *pro se* petition for a writ of habeas corpus in the Northern District of New York reasserting the substantive claims of his direct appeal. Magistrate Edward M. Conan recommended that petitioner's application be denied because petitioner had procedurally defaulted on his claim that the trial court inadequately responded to the jury's inquiry into Ashman's immunity and because two other claims—insufficiency of the evidence and the prosecution's decision not to grant Moore immunity—were meritless. Due to an oversight, however, Magistrate Conan did not address the merits of petitioner's claim challenging the admission of evidence of the circumstances surrounding petitioner's unrelated arrest. In December, 1985, Chief Judge Howard S. Munson approved Magistrate Conan's recommendation and denied the petition.

In January, 1986, following a motion by petitioner for vacatur of the order of the District Court, or, in the alternative, a certificate of probable cause to appeal, Chief Judge Munson remanded the case to Magistrate Daniel Scanlon, Jr. for reconsideration of all of petitioner's claims. Magistrate Scanlon recommended that the district court find: that petitioner had defaulted on his claims that the trial judge should have told the jury about Ashman's immunity grant and that petitioner's remaining claims were properly raised, but without merit. The Magistrate found meritless petitioner's arguments that the trial court should have ordered immunity for the defense witness at the new trial hearing, that the prosecutor's attempt to introduce evidence concerned with an unrelated arrest violated petitioner's rights to a fair trial, and that the trial evidence was insufficient to support the conviction. On December 27, 1988, the district court approved Magistrate Scanlon's report and denied the petition.

On June 23, 1989, the district court denied petitioner's application for a Certificate of Probable Cause. On December 7, 1989, we granted petitioner's motion for a Certificate of Probable Cause and for appointed counsel and allowed the appeal.

### DISCUSSION

On appeal from the district court's denial of his habeas petition, Blissett renews his

argument that he was denied a fair trial in violation of the sixth and fourteenth amendments to the United States Constitution.

■■■■ As a preliminary matter we note that, contrary to the state's assertions, petitioner has complied with the statutory requirement that he exhaust his state remedies before applying for a federal writ of habeas corpus. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 275–276, 92 S.Ct. 509, 512–513, 30 L.Ed.2d 438 (1971); *Blazic v. Henderson*, 900 F.2d 534, 537 (2d Cir.1990); *see also Daye v. Attorney General of the State of New York*, 696 F.2d 186, 190 n. 3 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). We have held that state remedies have been exhausted when a petitioner is denied relief at the state level having first:

> informed the state court of both the factual and the legal premises of the claim he asserts in federal court.... [and] placed before the state court essentially the same legal doctrine he asserts in his federal petition.... [Additionally, a habeas petitioner must assert] the claim [at the state level] in terms so particular as to call to mind a specific right protected by the constitution.

*Daye*, 696 F.2d at 191–92, 194. While not "every argument remotely resembling a federal constitutional claim puts state courts on notice" so as to satisfy the exhaustion of remedies requirement, *Petrucelli v. Coombe*, 735 F.2d 684, 690 (2d Cir.1984), "[a]dherence to exhaustion principles does not require a petitioner to raise his claims 'by citing chapter and verse' of hornbook law; it simply mandates that the state be given a fair opportunity to hear the claim." *Abdurrahman v. Henderson*, 897 F.2d 71, 73 (2d Cir.1990). A petitioner has given the state court such an opportunity where he has presented, on direct appeal, the essential factual and legal allegations contained in his federal claim. *Blazic*, 900 F.2d at 537; *Morgan v. Jackson*, 869 F.2d 682, 684 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989). Moreover, even if not alerted by

the defendant, the state court might be alerted to the existence of a federal constitutional issue by briefs filed by the state in opposition. *Daye v. Attorney General*, 696 F.2d 186, 192 n. 5 (2d Cir.1982).

Here, petitioner's brief to the Appellate Division, which appears to have been included in his appeal to the Court of Appeals, asserted that he was deprived of his "due process right to a fair trial" guaranteed by the Fourteenth Amendment. The brief argued that petitioner's rights had been violated by, first, the trial court's refusal to inform the jury directly of Ashman's grant of immunity, by the prosecutor's questioning of Officer Smith (through which he attempted to introduce evidence of petitioner's unrelated arrest), and by the trial judge's refusal to order the prosecution to grant Moore immunity at the post-trial hearing. Petitioner's brief clearly laid out the facts underlying his legal claims and his theory that the acts of the trial court and the prosecutor had deprived him of a fair trial. This was more than sufficient to apprise the state appeals court of petitioner's federal constitutional claims.

## I. Trial Court's Advice to the Jury Regarding Ashman's Immunity

■■■ Petitioner contends he was denied a fair trial because the trial judge failed to inform the jury that a key government witness, Ashman, testified under a grant of immunity.

During its deliberations, the jury asked the Court whether Ashman and Brownie had been granted immunity from prosecution. The Assistant District Attorney reminded the court that while Brownie's immunity had been stipulated, no evidence had been presented with respect to Ashman:

> Regarding the ... witness Devon Ashman, there is no evidence in the record as to whether or not he received immunity. However, there is evidence in the record in the way of using his Grand Jury testimony in cross examination that he did testify in the Grand Jury. The law in this state, as your Honor knows, is that if someone testifies before the Grand

Jury they grant him immunity unless they sign a waiver of immunity.... However, whether or not the witness signed a waiver is not in evidence, and I don't think that we can have the jury speculating on that particular matter. So I would suggest to the Court instructing them on the law without finally reaching the ultimate conclusion on Devon Ashman.

Defense counsel objected to this proposal as misleading but the trial judge advised the jury:

There was a stipulation entered into during the course of the trial between Mr. Johnson and Mr. Dudley that the witness, Capel Brownie, was granted immunity from prosecution.... With respect to the witness Devon Ashman, there was testimony during trial that Mr. Ashman had testified before the Grand Jury. The law of this state is that one who testifies before the Grand Jury without having executed a waiver of immunity has immunity from prosecution.

Petitioner asserts that, notwithstanding the foregoing instruction, the trial judge erred in not telling the jury directly that Ashman had been granted immunity, and the error was of sufficient magnitude to require the grant of the habeas petition. We disagree.

Defense counsel essentially requested that the trial judge reopen the record, after jury deliberations had already begun. The trial court's refusal to grant this request was not an abuse of discretion. Nor did the trial court's decision deprive petitioner of a fundamentally fair trial.

■ Under New York law, a trial court may reopen the record after the commencement of deliberations to permit newly discovered evidence or evidence "on an essential point which had been overlooked." *People v. Ferrone*, 204 N.Y. 551, 553, 98 N.E. 8 (1912); *see People v. Washington*, 71 N.Y.2d 916, 918, 528 N.Y.S.2d 531, 532, 523 N.E.2d 818, 819 (1988); *People v. Olsen*, 34 N.Y.2d 349, 355, 357 N.Y.S.2d 487, 490, 313 N.E.2d 782, 785 (1974). New York courts are cautioned, however, against the routine granting of such requests, in order to preserve an orderly trial process and avoid giving undue emphasis to the evidence transmitted to the jury during deliberations. *Olsen*, 34 N.Y.2d at 355, 357 N.Y.S.2d 487, 313 N.E.2d 782; *cf. United States v. Golomb*, 754 F.2d 86, 89 (2d Cir. 1985).

■ Even if the trial judge's refusal to directly inform the jury of Ashman's immunity was error, it was clearly not an error of constitutional dimension that would warrant the issuance of a writ of habeas corpus. *See Taylor v. Curry*, 708 F.2d 886 (2d Cir.), *cert. denied*, 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983). The relevant inquiry is whether the error, if there was one, deprived petitioner of a fundamentally fair trial. *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir.1985); *Taylor v. Curry*, 708 F.2d at 891. No such deprivation occurred in the instant matter. Petitioner had vigorously attacked Ashman's credibility and put in evidence that Ashman had cooperated with the police and the District Attorney. The evidence that was excluded was thus largely cumulative and did not create a reasonable doubt that would not otherwise exist. *See Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir.1988). A trial court must have considerable discretion to admit or reject cumulative impeachment evidence, particularly when admission would entail reopening the trial after jury deliberations have begun. *See Washington*, 71 N.Y.2d at 918, 528 N.Y.S.2d 531, 523 N.E.2d 818. Finally, where counsel fails to account adequately for the failure to elicit the evidence, as here, there is substantial justification for refusing to reopen the record. *See also United States v. Aiken*, 373 F.2d 294, 300 (2d Cir.), *cert. denied*, 389 U.S. 833, 88 S.Ct. 32, 19 L.Ed.2d 93 (1967).

## II. Introduction of Evidence of Petitioner's Arrest

■ Petitioner's second claim is that he was denied a fair trial when the prosecutor willfully disregarded an adverse court ruling and attempted to draw the jury's attention to inadmissible and prejudicial evi-

dence regarding the circumstances of petitioner's arrest.

During a pre-trial hearing, Officer Philip Smith testified that he initially arrested the petitioner for reckless endangerment, possession of a loaded firearm and criminal possession of stolen property after petitioner's car had sideswiped Officer Smith's unmarked police car while the latter was investigating an armed robbery. Officer Smith turned petitioner over to the detective investigating the Bowen murder. Petitioner was re-arrested in connection with that crime. The court ruled Officer Smith's testimony as to the initial arrest inadmissible on the ground that its limited probative value was outweighed by the potential prejudice to the petitioner of this "other crimes" evidence. Nonetheless, at trial the prosecution announced its intention to call Officer Smith as a witness. The court at first sustained the defendant's objection to this testimony but then permitted the prosecution to elicit on direct examination that on August 17, 1979, Smith was working in plainclothes and investigating an armed robbery. When the prosecutor asked, "On that date did you have occasion to arrest the defendant Donovan Blissett?" the court sustained the defense objection. The prosecution asked for "an understanding of your Honor's ruling of the last question," leading to the following colloquy:

*The Court:* Mr. Johnston, I have sustained the objection and stricken the answer. Your next question.

*Mr. Johnston [prosecutor]:* You have stricken that answer that he arrested this defendant then I have no further questions.

*The Court:* [Do y]ou [defense counsel] have any questions?

*Mr. Dudley [defense counsel]:* I'd object to the comments of the District Attorney to your Honor's ruling repeating the statement which your Honor has stricken.

*The Court:* The jury again is asked to disregard the answer. Do you have any questions?

*Mr. Dudley:* No your Honor.

Defendant contends that the prosecutor's reiteration of petitioner's arrest by Officer Smith, notwithstanding the court's striking of the question, was misconduct sufficient to warrant habeas relief.

▆ The appropriate standard of review for a claim of prosecutorial misconduct in a petition for habeas corpus is whether the prosecutor engaged in " 'egregious misconduct ... amount[ing] to a denial of constitutional due process.' " *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir. 1990) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647–48, 94 S.Ct. 1868, 1873–74, 40 L.Ed.2d 431 (1974)). Prosecutorial misconduct denies a defendant due process only when it is " 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' " *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987) (quoting *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985)). In evaluating whether a prosecutor's question deprived petitioner of a fundamentally fair trial, it is important to " 'place th[e] remar[k] in context.' " *Id.* 483 U.S. at 766, 107 S.Ct. at 3109 (quoting *Darden v. Wainwright,* 477 U.S. 168, 179, 106 S.Ct. 2464, 2470, 91 L.Ed.2d 144 (1986)); *see United States v. Friedman,* 909 F.2d 705, 709 (2d Cir.1990). The severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry. *Friedman,* 909 F.2d at 709; *see also United States v. Biasucci,* 786 F.2d 504, 514 (2d Cir.), *cert. denied,* 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986).

Here, the prosecutor's attempt to emphasize the petitioner's "other crimes" in the face of the court's prior ruling was improper misconduct. *See United States v. Westbo,* 576 F.2d 285, 290–92 (10th Cir.1978), *cited in United States v. Turkish,* 623 F.2d 769, 777 (2d Cir.1980). We can discern no motive in the prosecution's placing Officer Smith on the stand other than an attempt to place before the jury other crimes evidence previously ruled inadmissible. Detective Rosenthal had re-arrested petitioner for the Bowen murder, not Officer Smith,

and by the time the latter was sworn in, the court had ruled off-limits the circumstances surrounding Smith's arrest of petitioner.

Nonetheless, we conclude that the misconduct did not deny petitioner a fundamentally fair trial. First, there is no claim that this prosecutorial misconduct was either "pervasive" or part of a "persistent" trial strategy, *United States v. Weiss*, 914 F.2d 1514, 1524 (2d Cir.1990); *Floyd*, 907 F.2d at 355 ("pattern" of misconduct); *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir.1989) (minimal risk of influencing jury through one inappropriate remark); *Biasucci*, 786 F.2d at 514 (isolated and infrequent outbursts not prejudicial). Petitioner points only to this single incident. Second, the trial judge responded promptly to the objections, twice instructing the jury to disregard the offending testimony. This was sufficient to "eliminate any possible prejudice from the prosecutor's remarks." *Tutino*, 883 F.2d at 1137. Finally, the jury convicted petitioner of murder after hearing Ashman's eyewitness testimony and Brownie's testimony regarding petitioner's admission. Under the circumstances, it is highly improbable that the brief stricken testimony relating to a possible arrest for robbery led to a murder conviction that otherwise would not have occurred, had the prosecutor respected the evidentiary parameters set forth by the pre-trial ruling.

III. Denial of Immunity to Defense Witness Moore

■ Petitioner's final claim is that he was denied due process rights to a fair trial by the court's failure to direct the prosecutor to grant immunity to defense witness Anthony Moore.

After trial, petitioner moved to set aside the verdict pursuant to N.Y.Crim.Pro.L. § 330.30(1) and (3) on the ground of newly discovered exculpatory evidence. Petitioner submitted an unsigned affidavit in which Moore claimed to have been in Ashman's apartment at the time of the shooting; that the petitioner was not present at the shooting; and that Ashman himself had fired at Bowen. The affidavit was accompanied by an affirmation of counsel explaining that the affidavit was unsigned because Moore had been threatened to deter him from testifying on petitioner's behalf. At a hearing on the motion, Moore asserted his Fifth Amendment privilege against self-incrimination in response to questions concerning the homicide. When the petitioner requested that Moore be granted immunity, the prosecutor objected on the ground that granting immunity would invite cooperative perjury. The trial court declined to order the government to grant immunity to Moore.

After hearing other witnesses presented by the defense, the trial court denied petitioner's new trial motion, ruling that the defense had failed to show by a preponderance of the evidence that Moore's testimony "would result in a verdict more favorable to the defendant, should there be a new trial." The trial court based this finding on the defense's failure to present a witness who would "confirm the information given by [defense counsel]." [1]

■ Absent exceptional circumstances, the Due Process Clause imposes no requirement that defense witness immunity be ordered "whenever it seems fair to grant it." *United States v. Turkish*, 623 F.2d 769, 774 (2d Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). Indeed, a trial court should order the prosecutor to grant a defense witness immunity only in extraordinary circumstances. *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir.), *cert. denied sub nom. Vence v. United States*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988) and *Castano v. United States*, 488 U.S. 932, 109 S.Ct. 323, 102 L.Ed.2d 341 (1988). In addition to ensuring that prosecutorial decisions concerning whom to prosecute and what evidence to present at a criminal trial will not be lightly interfered with by the

---

**1.** The trial court also expressed doubt as to whether that information, if it could be confirmed, was "newly discovered," on the grounds that petitioner was aware of Moore's existence prior to trial.

judiciary, it reduces the possibility of cooperative perjury between the defendant and his witness. "'A person suspected of crime should not be empowered to give his confederates an immunity bath.'" *United States v. Morrison*, 535 F.2d 223, 229 (3d Cir.1976) (quoting *In re Kilgo*, 484 F.2d 1215, 1222 (4th Cir.1973)).

■ Nonetheless, extraordinary circumstances warranting a directive that the government grant immunity to a defense witness in the interest of fundamental fairness may arise where (a) prosecutorial overreaching, through threats, harassment, or other forms of intimidation, has effectively forced the witness to invoke the Fifth Amendment, or the prosecutor has engaged in discriminatory use of immunity grants to gain a tactical advantage; (b) the witness's testimony is also material, exculpatory, and not cumulative; and (c) the defendant has no other way to obtain the evidence. *United States v. Pinto*, 850 F.2d at 935; *United States v. Shandell*, 800 F.2d 322, 324 (2d Cir.1986); *United States v. Todaro*, 744 F.2d 5, 9 (2d Cir.1984), *cert. denied*, 469 U.S. 1213, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985).

■ In order to satisfy the first prong of this standard, petitioner must show prosecutorial overreaching which substantially interferes with the defense, or with a potential defense witness's unfettered choice to testify. *Pinto*, 850 F.2d at 932. Such interference may involve threats or harassment intended to intimidate and discourage testimony, *id.* at 932, *United States v. Angiulo*, 897 F.2d 1169, 1192 (1st Cir.), *cert. denied sub nom. Granito v. United States*, — U.S. —, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990) and *Angiulo v. United States*, — U.S. —, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990); *United States v. Lord*, 711 F.2d 887, 891 (9th Cir.1983); *United States v. Morrison*, 535 F.2d 223, 229 (3d Cir.1976). Prosecutorial overreaching may also involve deliberate denial of immunity for the purpose of withholding exculpatory evidence and gaining a tactical advantage through such manipulation. *Pinto*, at 935, *United States v.*

*Shandell*, 800 F.2d at 324; *United States v. Todaro*, 744 F.2d at 10.

Here, petitioner points to the prosecutor's grants of immunity to Brownie and Ashman, but not Moore, as an "unfair advantage," as well as to the prosecutor's decision to "keep[ ] Ashman's immunity from the jury," presumably by refusing to stipulate to it. *See supra* Point I.

■ We disagree with petitioner that this satisfies the prosecutorial overreaching prong. We have already addressed, and rejected, the argument that immunity must be granted to defense witnesses in order to redress a supposed government "advantage" over the defense. *United States v. Turkish*, 623 F.2d at 774 (criminal proceedings are in "no sense symmetrical"). Only when a prosecutor has abused the government's ability to grant immunity by using it in a discriminatory fashion for the purpose of gaining a tactical advantage does due process require a grant of immunity for a defense witness. The record here does not reveal such a discriminatory use of immunity. "The number of witnesses immunized[,] ... without more, [does] not support a finding of this type of misconduct." *Todaro*, 744 F.2d at 10.

The prosecutor's refusal to stipulate to Ashman's immunity also does not raise the spectre of excessive prosecutorial gamesmanship. As discussed above, the jury's uncertainty concerning Ashman's immunity arose largely from the defense's failure to elicit the relevant information on cross-examination. It is undisputed that the prosecutor did not hamper petitioner from learning of Ashman's immunity, and that petitioner was fully aware that Ashman had been immunized as a result of his grand jury testimony. The prosecutor's refusal to cooperate in petitioner's request to reopen the trial record after the jury had already begun deliberating does not constitute manipulative conduct which would require a grant of immunity to a defense witness in a new trial proceeding.

Since petitioner has not satisfied the first prong of the test, we need not address the issues of the materiality of Moore's evi-

dence and petitioner's access to that evidence, although it is worth observing that petitioner had no guarantee that Moore, if truly in fear for his life, would testify favorably to petitioner even if he were granted immunity.

For all of the foregoing reasons, the district court's judgment denying the writ is affirmed.