Pedro HERNANDEZ, Petitioner,

v.

George BARTLETT, Superintendent, Elmira Correctional Facility, Respondent.

No. CV–90–4083.

United States District Court, E.D. New York.

Aug. 10, 1992.

Pedro Hernandez, pro se.

Elizabeth S. Ostrow, Asst. Dist. Atty., Brooklyn, N.Y., for respondent.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Petitioner Pedro Hernandez brings this habeas corpus petition under 28 U.S.C. § 2254, seeking to have his New York state murder conviction vacated. For the reasons set forth below, his petition is denied.

On June 23, 1987, petitioner was convicted on two counts of second-degree murder (New York Penal Law §§ 125.25[1], [3]) following a jury trial. He thereafter received a sentence of two concurrent terms of incarceration of twenty-five years to life. Petitioner, who has exhausted his state appeals, alleges that "the prosecutor's misconduct during his sarcastic cross examination of appellant, including his false insinuation that appellant had an unspecified prior criminal record, deprived appellant of a fair trial." Petition ¶ 12(A).

At trial, the prosecution introduced extensive evidence that petitioner, acting with an uncharged accomplice (Sonny Rodriguez), had lured petitioner's landlord (Miguel Rubio) to petitioner's apartment in order to rob him of rent money, and that the two men had then murdered Rubio. According to the testimony of Detective Samuel McCalvin, a New York City police officer, petitioner became a suspect from the moment Rubio's body was found in petitioner's apartment. (Tr. 203–04) After tracking petitioner to Florida, McCalvin conducted an interview on March 1, 1986 in which petitioner provided two separate statements (at 7:40 and 9:30 p.m.) admitting that he had lured Rubio to his apartment and assisted in his murder. (Tr. 219–34) At 10:30 p.m. that same day, petitioner made a tape-recorded statement reciting essentially the same version of events. (Tr. 234–45, 304–07) An authenticated duplicate of the original taped confession was admitted into evidence. (Tr. 244)

Petitioner testified in his own defense at trial. He asserted initially that on the evening of the murder, he simply gave Rodriguez a set of keys to his apartment (Tr. 384–85) and left shortly thereafter (Tr. 385–87). Later during direct examination, however, petitioner admitted being present in the apartment when Rubio was killed. (Tr. 395–96) Petitioner testified that Rodriguez, who appeared to be on drugs, killed Rubio despite petitioner's unsuccessful intervention. (Tr. 396, 409) He also denied the truth of the tape-recorded statements, and asserted that (with the exception of one sentence) the entire tape consisted of someone impersonating him. (Tr. 429–37)

On cross-examination, petitioner and the prosecuting attorney engaged in a series of sharp exchanges. The first of those objected in the petition are found at pages 383–84 of the transcript:

Q: Isn't it true that Sonny Rodriguez and you discussed robbing Mr. Rubio in your apartment on the afternoon of February 17th, 1987?

A: Of course not. I never been incarcerated for robbery. Sonny is doing time for robbery right now.

Q: *Been incarcerated for other things, haven't you, Mr. Hernandez?* [1]

MR. JACOBS [defense counsel]: Objection, your Honor.

THE COURT: Come on up.

[bench conference off the record]

THE COURT: I am going to sustain the objection for that last question and strongly urge the jury to disregard that.

Q: Isn't it true, Mr. Hernandez, that your role was to get Mr. Rubio down into

---

1. At a *Sandoval* hearing prior to trial, the prosecution had been barred from eliciting information about petitioner's arrest record or prior plea of guilty on a charge of disorderly conduct.

the basement apartment so that you and Sonny could rob him?

A: Of course not. Didn't Mr. Ishmael Rivera [sic] that day on the stand say to the jury that he never seen me call Mr. Rubio down to the apartment? [2]

Didn't he state he never seen me in the hallway? Didn't he state he never seen me in the building, but down the block? He never seen me call anyone.

Q: You're talking about Ishmael Sanchez?

A: Of course, he made himself very clear for myself.

Q: He also said he wasn't facing the right way to see who it was, isn't that right?

A: He knows my voice.

Q: *So you got away with that part of it, in other words?*

In response to each of the highlighted remarks, the trial court upheld defense counsel's objection. The court also instructed the jury to disregard the question about petitioner's prior history of incarceration. (Tr. 383–84)

The prosecutor also cross-examined petitioner on his alleged efforts to prevent Sonny from harming Rubio:

Q: And you couldn't get Sonny Rodriguez off of Mr. Rubio?

A: I mean, when a man is in another position of doing something to another man that is either on drugs or something, the man has two, two—how do you say, two hims, hes, whatever. You have a second you inside of you, you know, that it takes about ten or 20 men, you know, what I'm trying to say, is that you have another you inside of you that you could hurt a person when you want to and you could have the ability and the power, you know, and you could gain access [sic] strength.

Q: Now, when you say "you", Mr. Hernandez, are you talking about you or the you in general?

A: Well, of course not. I'm speaking about Sonny.

Q: But you did use the word "you", correct?

A: Well, let me rephrase it better, Sonny.

Q: *It sounds better that way, doesn't it?*

MR. JACOBS: Objection, that's argumentative.

THE COURT: I'll sustain that. Disregard that, ladies and gentlemen. (Tr. 407–08)

The government's cross-examination of petitioner concerning his taped confession produced a similar series of exchanges such as the following, which led the court to issue a mild rebuke to the prosecutor:

A: Do you have the original copy of this tape to prove the truth? Do you have the original copy, the original transcripts? Do you have that?

Q: *If I did, this would be a lot shorter, Mr. Hernandez.*

. . . . .

Q: This is the original transcript?

A: No, it is not. That is a duplicate transcript and a duplicate tape. And, see, you're all trying to frame me and it is not going to succeed because I didn't kill anyone.

Q: *Well, fortunately, I think somebody else decides that.*

MR. JACOBS: Objection, your Honor.

THE COURT: Mr. Harkins, please. (Tr. 431A–432A, 442–43)

Finally, petitioner raises objections to two other comments made by the prosecutor. After petitioner remarked that he held Sonny Rodriguez and the police responsible for his arrest and indictment, the prosecutor replied, "Anybody else you'd like to blame your predicament on besides yourself, Mr. Hernandez?" (Tr. 462) The court sustained an objection to this comment, as well as to the following exchange:

---

**2.** Ishmael Sanchez testified that on the day of Rubio's murder, he was standing with Rubio outside the apartment when a voice from the apartment called to Rubio, who went inside. Sanchez was not in a position to see the speaker, and was unable to identify the voice. (Tr. 162)

Q: .Now, Mr. Hernandez, you don't use drugs, is that what you said on direct?

A: No, I don't use drugs.

Q: Never used drugs in your whole life?

A: Do you want me to be honest with you?

Q: *There is always the first time.*

MR. JACOBS: Objection, Judge, the comment.

. . . . .

THE COURT: I believe I'm going to sustain the objection to the comment by the D.A. and ask you to disregard it, please.

(Tr. 431)

## DISCUSSION

 As a threshold matter, it is clear that claims of prosecutorial misconduct of the type advanced here are cognizable on a petition for habeas corpus. *See, e.g., Donaldson v. Dalsheim,* 508 F.Supp. 294, 297 (S.D.N.Y.), *aff'd without op.,* 672 F.2d 899 (2d Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982). It is equally clear, however, that in order to rise to the level of a constitutional violation warranting reversal of the conviction, the improper remarks must have caused the petitioner substantial prejudice. *United States v. LaMorte,* 950 F.2d 80, 83 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1938, 118 L.Ed.2d 544 (1992); *United States v. Monaghan,* 741 F.2d 1434, 1443 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985). In analyzing the challenged remarks within the context of the entire trial, this court must consider three primary factors: the severity of the misconduct, the degree of curative measures taken, and the likelihood of conviction in the absence of the improper statements. *See LaMorte,* 950 F.2d at 83; *Blissett v. Lefevre,* 924 F.2d 434, 440 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991); *Olsen v. McFaul,* 843 F.2d 918, 929–30 (6th Cir. 1988); *Monaghan,* 741 F.2d at 1443.

 Considered individually and in the aggregate, the challenged remarks of the prosecutor at petitioner's trial do not constitute sufficient cause for vacating the conviction. While this court agrees that nearly all of the offending statements were inappropriate, none of them carried a significant risk of improperly inflaming or misleading the jury. For instance, the suggestion that petitioner's testimony was evasive and untruthful ("It sounds better that way, doesn't it?"; "There is always the first time.") seldom rises to the level of a constitutional deprivation. *See Strouse v. Leonardo,* 928 F.2d 548, 556–57 (2d Cir. 1991) (repeatedly referring to defendant as "liar" improper but not substantially prejudicial); *Olsen,* 843 F.2d at 930 (references to defendant as "deadbeat", "thief", "creep", and "liar" insufficient basis for granting petition); *cf. Lindsey v. Smith,* 820 F.2d 1137, 1155 (11th Cir.1987) (improper reference to defendant as "scum" during closing argument not a denial of due process), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989). Moreover, the fact that petitioner invited some of these sarcastic observations by asking questions of counsel ("Do you want me to be honest with you?") and by "opening the door" with unresponsive answers ("I never been incarcerated for robbery.") diminishes their impropriety. *Cf. Monaghan,* 741 F.2d at 1443 & n. 42 (one relevant factor is extent to which statements were made in response to defense statements) (citing *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982)).

Even in the case of the most inflammatory statement—counsel's allusion to petitioner's prior criminal history—it cannot be said that petitioner suffered substantial prejudice. In the recent *Blissett* case noted above, the Second Circuit denied a habeas petition predicated in part on nearly identical conduct. In that case, the prosecutor asked the witness (a police officer) about the defendant's arrest on a charge unrelated to those brought at trial; after the court sustained an objection and struck the answer from the record, the prosecutor compounded his offense by restating the answer. 924 F.2d at 440. Notwithstanding the clear impropriety of this conduct, the Second Circuit found it insufficient to

justify reversing the conviction. Figuring prominently in the court's reasoning was the fact that the trial court responded promptly to the objections and issued two separate instructions to the jury to disregard the statements. *Id.* at 441.

In this case, the trial court took equally prompt action, sustaining the objection and "strongly urg[ing] the jury to disregard" the objectionable remark concerning petitioner's criminal history. Indeed, under the second prong of the three-part test applicable here, the trial court's repeated curative jury instructions (on three separate occasions) in response to the prosecutor's remarks militate strongly against a finding of significant prejudice.

Finally, even if the comments had been more egregious and gone unrebuked by the court, the strong evidence of petitioner's guilt would weigh heavily against granting the petition. In light of petitioner's contradictory, evasive, and at times unbelievable testimony,[3] the fact that the victim's body was found in his apartment, and especially in view of his multiple confessions—including one recorded on an audiotape played for the jury—it is difficult to imagine that the jury could ever have returned a verdict of acquittal. Clearly, where there is overwhelming evidence of guilt, it is highly unlikely that a handful of improper comments by the prosecutor can be said to have caused a defendant substantial prejudice.

In sum, petitioner's claims fail to survive scrutiny under the three-part test adopted in this Circuit. Accordingly, both petitioner's request for appointment of counsel and the petition for habeas corpus are denied.

SO ORDERED.

---

**3.** On appeal to the Supreme Court Appellate Division, even defense counsel was forced to concede in his brief that "appellant's denial that his was the voice on the tape was ... not especially credible...." App. Brief at 37.