**UNITED STATES of America,**
**Appellee,**

v.

**Carlos SANCHEZ, Defendant–**
**Appellant.**

**Docket Nos. 01–1076, 01–1207.**

United States Court of Appeals,
Second Circuit.

March 25, 2002.

Jeremiah Donovan, Old Saybrook, CT, for Appellant.

Martin E. Coffey, Assistant United States Attorney; Alan Vinegrad, United States Attorney, Susan Corkery, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY, for Appellee.

Present WALKER, Chief Judge, F.I. PARKER and SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Defendant-appellant Carlos Sanchez appeals from the April 6, 2001 judgment of the district court convicting him, after a jury trial, of one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371 (Count One), two counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts Two and Three), and ten counts of making false statements to the Department of Housing and Urban Development ("HUD"), in violation of 18 U.S.C. § 1010 (Counts Four through Thirteen). Sanchez was sentenced principally to concurrent terms of forty-six months' imprisonment for the bank fraud and conspiracy counts, and concurrent terms of twenty-four months' imprisonment on each of the counts for making false statements to HUD, and was further ordered to pay restitution in the amount of $ 4,234,655.

On appeal, Sanchez argues that (1) the district court erred in denying Sanchez's request to order the government to immunize two potential defense witnesses in violation of his Fifth Amendment right of due process; (2) the district court erred in denying his motion to dismiss the indictment because some of the testimony presented to the grand jury by the lead agent in the case later proved to be false; (3) the district court erred in restricting his cross-examination of the lead agent at trial in violation of his Sixth Amendment right of confrontation; (4) the government's evidence at trial constituted a constructive amendment or, in the alternative, a preju-

dicial variance to the indictment; (5) the district court committed plain error in failing to give a curative instruction regarding evidence of a prior bad act; (6) the evidence was insufficient to establish that he had the specific intent to defraud a federally insured bank; and (7) the district court erred in instructing the jury that the commission of a single overt act was sufficient to convict Sanchez on the conspiracy count because it consisted of four separate objectives.

Viewing the evidence in the light most favorable to the government, *United States v. Samaria*, 239 F.3d 228, 233 (2d Cir.2001), the government established at trial that appellant Sanchez, an independent mortgage broker, Lennox Slinger, a real estate broker, and John Stolorenko, President of Eastwood Mortgage Bankers, Ltd. ("Eastwood"), a mortgage bank, filed approximately eighty false mortgage applications ("Forms 1003") with HUD and prepared false documents in support of those applications, including bank statements, IRS Forms W–2, tax returns, and documents verifying the applicants' participation in a private savings club ("sou sou" letters). Slinger and Sanchez were responsible for identifying properties for sale and would arrange for the innocent owner to sell the property to a "middle buyer" at fair market value. The middle buyer would then flip the property to a second buyer, or the "end buyer," at an inflated price on the same day.

In order to finance the second purchase, the end buyer signed documents in support of a mortgage from Eastwood. Several of the end buyers testified that they did not understand that they were applying for a mortgage because the documents had not been properly explained to them and that they believed that their names would be removed from any documents related to the property after several months. Each of the mortgages was insured by HUD, which would reimburse the holder of the note for the balance of the mortgage in the case of default. After about six months, the mortgages were allowed to go into default.

According to the testimony of several of the participants of the scheme and ten end buyers, Sanchez often prepared the Forms 1003 by hand, recruited end buyers and transported several of them to the closings, personally paid end buyers fees for their participation and offered them more money if they could find more end buyers, called credit agencies pretending to be a borrower, and supplied the names of businessmen willing to act as employers on the falsified documents. Although Sanchez personally signed many of the Forms 1003, Stolarenko admitted after the grand jury indicted Sanchez that he had forged Sanchez's signature on several of the Forms 1003.

In order to pay for each of the mortgages, Eastwood would obtain funds from a line of credit with two federally insured banks, China Trust Bank and Summit Bank. Eastwood would then sell the mortgage note to a secondary buyer, such as Country Wide Home Loans, before the note went into default. Sanchez profited from the fees and commissions charged on the inflated mortgage notes and from the sale of the note to the secondary buyer.

Appellant first appeals the district court's refusal to immunize the two closing attorneys who would have contradicted the testimony of the end buyers that the closings were rushed. It is well-established that "[a]bsent exceptional circumstances, the Due Process Clause imposes no requirement that defense witness immunity be ordered whenever it seems fair to grant it." *Blissett v. Lefevre*, 924 F.2d 434, 441 (2d Cir.1991) (internal quotation marks

omitted). The defense bears the burden of satisfying the following three-part test:

> First, the district court must find that the government, through its own overreaching, has forced the witness to invoke the Fifth Amendment or, that the government has engaged in discriminatory use of grants of immunity to gain a tactical advantage; second, the witness' testimony must be material, exculpatory and not cumulative; and third, the defendant has no other source to obtain the evidence.

*United States v. Diaz,* 176 F.3d 52, 115 (2d Cir.1999).

■ We reject appellant's claim that the mere fact that many of the government's witnesses testified under grants of immunity constitutes a "discriminatory use" of the immunity power. *See United States v. Todaro,* 744 F.2d 5, 10 (2d Cir.1984) (holding that "[t]he number of witnesses immunized by the Government, without more, would not support a finding of [discriminatory use]"). We find that the government's use of its immunity power did not constitute a "deliberate denial of immunity for the purpose of withholding exculpatory evidence and gaining a tactical advantage." *Blissett,* 924 F.2d at 442.

■ Nor are we persuaded that the indictment should have been dismissed because the lead agent in the case, Christina Scarengi, testified at the grand jury proceedings that "Sanchez sign[ed]" several Forms 1003 when the signatures had actually been forged by Stolarenko. The fact that Stolarenko forged the signatures was presented to the petit jury that convicted Sanchez. "When, as here, a petit jury has found a defendant guilty beyond a reasonable doubt after hearing all the evidence ... dismissal of an indictment can be justified only as a method of deterring prosecutorial misconduct." *United States v. Bari,* 750 F.2d 1169, 1176 (2d Cir.1984); *see*

*United States v. Morrison,* 153 F.3d 34, 55 (2d Cir.1998) (finding no prejudice where petit jury convicted after full exposure to evidence presented to grand jury in tainted form). Neither the prosecutor nor the agent had any reason to believe that Stolarenko had signed the forms. Therefore the agent's testimony does not amount to the "knowing or reckless misleading of the grand jury" necessary to warrant dismissal of the indictment. *Bari,* 750 F.2d at 1176.

We have carefully considered Sanchez's remaining arguments and find them to lack merit. Accordingly, for the reasons set forth above, the judgment of the district court is hereby AFFIRMED.